**Jack KORNICK, Irving Kornick and Hyman Spreckman, Plaintiffs,**

v.

**Buford TALLEY, Eugene T. Barwick, E. T. Barwick Industries, Inc. a Georgia Corporation, Wayne Hise, Jr., J. Marcus Pate, H. Lee Roper and W. Baer Endictor, Ernst & Ernst, Defendants.**

No. 78–991.

United States District Court, N. D. Georgia, Atlanta Division.

June 12, 1980.

**716**

Harry A. Young Jr., and Jack Kornick, Neistein, Richman, Hauslinger & Young, Ltd., Arthur T. Susman, Prins, Flamm & Susman, Chicago, Ill., A. Timothy Jones, Freeman & Hawkins, Atlanta, Ga., for plaintiffs.

Allan Horwich, Schiff, Hardin & Waite, Chicago, Ill., for E. T. Barwick Inds.

Foy R. Devine, Devine & Morris, Atlanta, Ga., for Buford Talley.

W. Baer Endictor, Atlanta, Ga., pro se.

John G. Parker, Richard M. Kirby and Hugh M. Dorsey, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Ernst & Ernst.

H. Lee Roper, Atlanta, Ga., pro se.

J. Marcus Pate, Lilburn, Ga., pro se.

John J. Dalton and Carl E. Sanders, Ralph H. Greil, Corneill Stephens, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for E. T. Barwick Ind.

James E. Massey, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for A. Wayne Hise.

Arthur Howell, III, Jones, Bird & Howell, Atlanta, Ga., for Eugene Barwick.

## ORDER

ROBERT H. HALL, District Judge.

This case was initially filed on February 8, 1978, in the United States District Court for the Northern District of Illinois against E. T. Barwick Industries, Inc. and certain of its former officers and directors. The plaintiffs allege in Count 1 violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), Sections 10(b), 14(a) and 18 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), 78r(a), and Rules 10b–5 and 14a–9 promulgated by the Securities and Exchange Commission. 17 C.F.R. §§ 240.10b–5 and 240.14a–9. Plaintiffs contend in Count 2 that these violations are also violations of the defendants' common law and fiduciary duties. Count 3 sets forth a shareholders' derivative suit against Barwick Industries' former independent accountants, Ernst & Ernst, now Ernst & Whinney.

On May 19, 1978, this action was transferred to this court by order of the Honorable Joel M. Flaum, Judge, United States District Court, Northern District of Illinois.

The plaintiffs as co-trustees of a trust bought Barwick Industries' stock and have brought this suit in their representative capacity. The plaintiffs have moved for certification of this case as a class action under Fed.R.Civ.P. 23. Their proposed definition of the class is "all holders of the common shares of E. T. Barwick Industries, Inc., during the period beginning August 8, 1968, through and including August 10, 1976, excluding the defendants and those in concert with them." The beginning date is the date that shares of Industries were first sold to the public; the concluding date is the date the Securities and Exchange Commission filed a complaint against the company and some of its officers and directors.

Having considered all matters of record and the oral argument of counsel presented

at a hearing held on March 13, 1980, the court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Barwick Industries has over 10 million common shares held by over 2,000 shareholders. The shares were traded in the over-the-counter market from August 1968–September 14, 1970. Since September 15, 1970, the shares have been listed for trading on the American Stock Exchange. Amended Complaint ¶ 5; Barwick Industries' Answer ¶ 5.

2. Plaintiffs are co-trustees of the Ben Kornick Trust, Amended Complaint ¶ 1(a), which actually consists of marital and residuary testamentary trusts created by the will of Ben H. Kornick. J. Kornick Dep. 4–5, 24–25. By the terms of the will, Fanny Kornick Levin (wife of Ben H. Kornick) is the beneficiary during her lifetime; plaintiffs Jack and Irving Kornick, and Lorraine Spreckman (all children of Ben. H. Kornick) are the remaindermen; and the children of the said remaindermen are contingent remaindermen designated to receive any remaining corpus per stirpes if their parent is deceased at the death of Fanny Kornick Levin. Ben Kornick died in March of 1963 and following probate the trust was set up in 1966. J. Kornick Dep. 4, 25; Exh. 10.

3. The assets of the trust were originally valued between $400,000 and $500,000. J. Kornick Dep. 8. Current assets of the trust are estimated to be worth less than $3,000. J. Kornick Dep. 5–7. The trust has insufficient assets to pay for the cost of notice to the class although the plaintiffs have executed a personal undertaking by which each agrees to pay for the cost of litigation and particularly any notice to the class. J. Kornick Dep. 111–12; Exh. 2.

4. In December 1968, plaintiffs, as co-trustees, purchased for the Ben Kornick Trust a total of 1,000 shares of common stock of Barwick Industries. This purchase was effected in three separate transactions: December 2, 1968—200 shares; December 3, 1968—400 shares; and December 12, 1968—400 shares. Amended Complaint ¶ 1(a); J. Kornick Dep. 133–34; Exhs. 7, 8, 9. Other than these three transactions in December, 1968, plaintiffs have neither purchased nor sold, either as trustees or as individuals, any interest in Barwick Industries. Amended Complaint ¶ 1(c); J. Kornick Dep. 117.

5. The only financial information the plaintiff Jack Kornick saw in connection with the purchase of Barwick Industries stock was a public notice in a trade paper. J. Kornick Dep. 57–58, 118. Before purchasing the stock, Jack Kornick did not see Barwick Industries proxy statements, financial statements or prospectus. J. Kornick Dep. 58, 117–18.

6. Before the purchase of Barwick Industries stock, plaintiff Hyman Spreckman did not see the company's financial statements, proxy statements, or prospectus; he relied entirely on the Kornicks' recommendation. Spreckman Dep. 21–23, 41–44, 46, 81.

7. Plaintiff Irving Kornick saw in connection with the purchase of Barwick Industries stock the prospectus of August 8, 1968. I. Kornick Dep. 19–20, 36.

8. The plaintiff Jack Kornick has admitted that he borrowed money from the Trust. J. Kornick Dep. 193. He repaid without interest some of the borrowed money. J. Kornick Dep. 210. Of the borrowed money, $17,500 was never repaid. J. Kornick Dep. 198.

9. The plaintiff Irving Kornick has admitted that he borrowed money from the Trust which he repaid without interest. I. Kornick Dep. 113–15. Irving Kornick also borrowed approximately $30,00 from the Trust which he never repaid. I. Kornick Dep. 110, 123.

10. A conflict exists between the testimony of Jack and Irving Kornick and that of Hyman Spreckman. The Kor-

nicks stated that their unrepaid loans from the trust were forgiven. J. Kornick Dep. 198; I. Kornick Dep. 124. J. Kornick stated that he participated as a trustee in the decision to forgive his own indebtedness. J. Kornick Dep. 198, 200. Hyman Spreckman denies any such forgiveness and claims that the money is still owed. H. Spreckman Dep. 73–74, 80.

11. Only one other securities action similar to plaintiffs' lawsuit has been filed against Barwick Industries. It is an individual, not a class, action. No alleged class member has sought to intervene in either that action or this action. (See *Osterneck, et al. v. E. T. Barwick Industries, Inc., et al.*, United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action File No. C75–1728A (Ward, J.).)

## CONCLUSIONS OF LAW

Before the court may certify this case as a class action, the plaintiffs must meet all four requirements of Fed.R.Civ.P. 23(a)[1] and one of the requirements of Fed.R.Civ.P. 23(b).[2] *Blumenthal v. Great American Mortgage Investors*, 74 F.R.D. 508, 511 (N.D.Ga.1976). The court will discuss each of the requirements of Rule 23(a) and (b) in turn.

### NUMEROSITY: RULE 23(a)(1)

The court found, based on the plaintiffs' allegations and Barwick Industries' admissions, that the company has approximately 10.2 million common shares held by over 2,000 shareholders. The court also found that the stock has been traded since 1968 either in the over-the-counter market or on the American Stock Exchange. The class period sought by the plaintiffs begins in 1968 and ends in 1974.

The plaintiffs argue that those facts demonstrate that the class is so numerous that joinder is impracticable. Barwick Industries contends that plaintiffs have made a conclusory allegation of numerosity, that the record is silent on the number of members of the class during the class period and that the number of shareholders on the date of the filing of the complaint is irrelevant.

■ Although the plaintiffs are not required to show the exact number of class members, they cannot rely on mere speculation to satisfy Rule 23(a)(1). *Cannon v. Texas Gulf Sulphur Co.*, 53 F.R.D. 216, 219 (S.D.N.Y.1971). That Barwick Industries had some 2000 shareholders in 1978 when the complaint was filed tends to prove that the number of shareholders from 1968 to 1974 is so numerous that joinder is impracticable. That Barwick Industries stock was publicly traded in the over-the-counter market and later on the American Stock Exchange during the class period also tends to prove the numerosity of the class. *Trattner v. American Fletcher Mtg. Investors*, 74 F.R.D. 352, 356 (S.D.Ind.1976).

■ Despite the lack of direct proof of numerosity during the class period, the court finds that the plaintiffs' indirect proof is adequate and that the class is so numerous that joinder is impracticable.

1. Rule 23(a) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

2. The plaintiffs contend that this case satisfies Rule 23(b)(3), which provides that an action may be maintained as a class action if the prerequisites of subsection (a) are met and in addition "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

## COMMONALITY: RULE 23(a)(2)

As the parties have noted, the requirements of Rule 23(a)(2) and (a)(3) overlap. The court will follow the suggestion of one commentator that (a)(2) causes the attorneys and the court to define the claims of the class and determine what those claims have in common while (a)(3) looks toward the individual claim of the class representative and requires that it have the essential characteristics of the class claims. 3B Moore's Federal Practice ¶ 23.06–2, p. 23–191.

The class claims are centered around false financial statements and proxy solicitations. The financial statements issued between August 1968 and April 1974 are false due to "artificial adjustments to inventory," Amended Complaint ¶ 11a, and "arbitrary reversals of certain accrued expense entries." Amended Complaint ¶ 14a. These financial statements allegedly violate Rule 10b–5.

The complaint also alleges that proxy solicitations issued between 1969 and 1976 violated Rule 14a–9 by failing to disclose the reversal of accrued expenses, artificial adjustments to inventory, and the sale of accounts receivable in October 1973 in violation of the company's long term loan agreements. Amended Complaint ¶ 24, ¶¶ 16–18a. The complaint also alleges that the company reported loans as sales of raw material, ¶ 15, and failed to disclose this false reporting to the shareholders in proxy solicitations. Amended Complaint ¶ 24.

The plaintiffs have identified only three specific financial statements—those of November 1, 1969, January 31, 1970 and January 31, 1971—as false. No particular misstatement or omission has been identified in these or in any other financial statement. No specific proxy solicitation has been identified as false nor have plaintiffs identified any omissions or misrepresentations in any of them.[3]

The plaintiffs have argued for certification based chiefly on their 10b–5 claim, and the court will devote its attention to those issues. The plaintiffs have pitched their 10b–5 claim on the theories that the defendants engaged in a common course of conduct to defraud investors or that they omitted material facts from the financial statements. In *Blackie v. Barrack*, 524 F.2d 891, 903–04 (9th Cir. 1975), the court affirmed the certification of a class of those who purchased stock over a 27 month period where the plaintiffs alleged specifically that one item in a series of financial reports was uniformly misrepresented throughout the class period. Although the allegations in this complaint are considerably less specific than in *Blackie*, they probably are adequate to show common issues of fact. Moreover, in cases involving material omissions of fact, individual reliance by each of the class members need not be proved; instead, reliance or causation is presumed from proof of materiality. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Rifkin v. Crow*, 574 F.2d 256, 260–63 (5th Cir. 1978). However, whether the class could

---

**3.** In this case, the named plaintiffs have brought their action following a Securities and Exchange Commission (SEC) action against the company and certain directors and officers. It is, of course, perfectly proper for the plaintiffs to take advantage of a prior SEC investigation. By acting in the wake of the agency, the plaintiffs could have alleged with specificity which company actions they wished to challenge. Instead, the amended complaint is so vague that the court finds it difficult to discern either what the individual or class claims are. The defendants have had similar difficulty. To the defendants' requests for specificity, the plaintiffs have stated that the Drake Report and SEC complaint show generally the nature of the class claims. The Drake Report is a report prepared

for the company as a result of the SEC complaint by an investigative committee agreed to by the SEC. The 200 page report and its supplement, defendants contend, should not be considered at all by the court. The court did consider the report (although pages were frequently out of order or totally missing). However, the report has been of little aid to the court in determining exactly what the class claims and individual claims are since the report is no better than the complaint in identifying specific omissions or falsities in specific financial statements or proxy solicitations. Moreover, parts of the report are simply irrelevant since they involve company practices not challenged in this action.

take advantage of the presumption of reliance in a fraud-on-the-market case is undecided in this circuit. *Rifkin v. Crow, supra,* 574 F.2d at 263; *see also Shores v. Sklar,* 610 F.2d 235, *rehearing en banc granted,* 617 F.2d 441 (5th Cir. 1980).

■ The court finds, on balance, that plaintiffs have met the commonality requirement. Common questions include the materiality of any omissions and whether the defendants acted in concert. *Blumenthal v. Great American Mortgage Advisors, supra,* 74 F.R.D. at 513.

*TYPICALITY: RULE 23(a)(3)*

As noted above, Rule 23(a)(3) requires that the individual claim of the class representative be similar to the class claims—a requirement referred to as typicality.

■ The court is hampered in its attempt to determine the individual claim of the trustees by the vagueness of the plaintiffs' complaint and the plaintiffs' failure to clarify their claims in response to defense requests for more specificity. The plaintiffs contend that the court's decision on class certification should rest on the allegations of the complaint, citing *Miller v. Mackey International,* 452 F.2d 424 (5th Cir. 1971). That case holds that in determining whether to certify a class, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 427. Subsequent cases indicate, however, that while any determination that the plaintiff is or is not likely to prevail on the merits is improper, a district court in making a certification decision must consider whether a plaintiff has established "[his] nexus with the class and its interests and claims which is embraced in the various requirements of 23(a) and (b)." *Huff v. N. D. Cass Co. of Alabama,* 485 F.2d 710, 714 (5th Cir. 1974) (en banc). The court must make some inquiry into both individual and class claims. This inquiry is not improper, as the Fifth Circuit has recognized. "[S]ome of the same factors that demonstrate a plaintiff's non-membership in the purported class may also spell defeat on his individual claim. However, consideration of these factors in deciding the class membership question does not constitute improper consideration of 'the merits' of plaintiff's individual claim." *Long v. Sapp,* 502 F.2d 34, 42 (5th Cir. 1974).

Although the complaint does not allege when the plaintiffs purchased stock or on what they relied, discovery revealed that the plaintiffs purchased early in the class period in reliance on the 1968 prospectus and various trade journals. The plaintiffs have failed to identify the specific alleged material misrepresentation or omission in that prospectus. This court has held that where plaintiffs rely on a "common course of conduct" theory, they are obligated to identify the false statements made and in which documents they appear, to state how the statements were false or misleading or what information was omitted, and to specify when the documents were issued and which defendants were responsible. *Blumenthal v. Great American Mortgage Investors, supra,* 74 F.R.D. at 513.

In *Blumenthal,* this court denied class certification in a suit in which the plaintiffs sought to represent a class of all stock purchasers over a five-year period. The court held that the plaintiffs had failed to satisfy the typicality requirement, stating, "Since the plaintiffs have failed to identify or isolate any particular misstatement or omission contained in the 1971 prospectus that is similar to those contained in the subsequent document [sic], this court could only speculate as to any nexus between their claims and those who purchased GAMI stock in the five years following. . . ." 74 F.R.D. at 513.

■ This case presents a similar difficulty. Nothing links the misrepresentations or omissions in the 1968 prospectus with those contained in any other documents issued by the company over the six-year period. The court finds that the plaintiffs have failed to carry their burden of demonstrating typicality.

*ADEQUACY OF REPRESENTATION: RULE 23(a)(4)*

As the findings of fact indicate, plaintiffs have sued as trustees of the Ben Kornick Trust. The defendants have raised a substantial question about the plaintiffs' discharge of their fiduciary duties to the trust.

The trustees loaned money to themselves from the trust assets which they failed to repay or repaid without interest. Unrepaid loans amounting to $47,500 may or may not have been forgiven; one plaintiff stated that his indebtedness to the trust had been forgiven and that he had participated as a trustee in the decision. Finding of Fact 10.

In *Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 671 (N.D.Ga.1975), this court held that class certification "should be denied where it appears that the representative could not serve in a fiduciary capacity because of past misconduct." In *Amswiss*, the proposed class representative in two separate cases had been enjoined from further violations of federal securities laws.

In this case, the trustees' conduct of the affairs of the trust has not been the subject of any lawsuit. Nevertheless, the court finds that the trustees' own admissions justify a finding that they breached their fiduciary duty to place the interests of the trust above their own personal interests. Based on their past misconduct, the court finds that the named plaintiffs are inadequate class representatives. The court's responsibility to oversee the conduct of a class action and particularly to approve any dismissal or compromise, Fed.R.Civ.P. 23(e), cannot substitute for adequacy of representation from the named plaintiffs.

*PREDOMINANCE: RULE 23(b)(3)*

Because of the court's conclusions on the requirements of Rule 23(a), the court need not consider the predominance requirement of Rule 23(b)(3).

On the basis of the findings of fact and conclusions of law, the court DENIES the plaintiffs' motion for class certification.

So ORDERED.