Marvin E. SCHATZMAN, as Successor Trustee of the Ben H. Kornick Trust, Plaintiff,

v.

Buford TALLEY, Eugene T. Barwick, E. T. Barwick Industries, Inc., a Georgia corporation, A. Wayne Hise, Jr., J. Marcus Pate, H. Lee Roper and W. Baer Endictor, and Ernst & Whinney (formerly Ernst & Ernst), Defendants.

Civ. A. No. C78–991A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 2, 1981.

Harry Young & Jack Kornich, Neistein, Richman, Hauslinger & Young, Ltd., Arthur T. Susman, Prins, Flamm & Susman, Chicago, Ill., A. Timothy Jones, Freeman & Hawkins, Atlanta, Ga., for plaintiff.

Allan Horwich, Schiff, Hardin & Waite, Chicago, Ill., for E. T. Barwick Inds.

Foy R. Devine, Devine & Morris, Atlanta, Ga., for Buford Talley.

W. Baer Endictor, Atlanta, Ga., pro se.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the court on a second motion for certification of a plaintiff class pursuant to Rule 23, Fed.R.Civ.P. The motion is brought by the new trustee of the Ben H. Kornick Trust, which is beneficial owner of the Barwick securities whose collapse in value precipitated this suit.

The original motion for class certification, brought by the former plaintiffs, the former trustees of the Kornick Trust, was denied by this court on June 12, 1980. *Kornick v. Talley*, 86 F.R.D. 715 (N.D.Ga.1980). That order set forth the genesis of this case, and there is no need to repeat it here.

The order of June 12, 1980, found that the requirements of Rule 23(a)(1) and (a)(2) had been met, but denied the motion because of the failure to meet the requirements of Rule 23(a)(3), typicality of the plaintiffs' claims, and 23(a)(4), adequacy of representation.

Since the denial of the original motion for class certification, Mr. Marvin Schatzman has been substituted as the trustee of the Kornick Trust by the Circuit Court of Cook County, Illinois. *In re Ben H. Kornick Trust*, No. 80 CH 5145 (Cook County Cir., Chancery Division, July 30, 1980). In an effort to cure the shortcomings of the original motion, Mr. Schatzman moved to substitute himself as named plaintiff and to file a second amended complaint.

The new complaint seeks relief under sections 10(b), 14(a), 18 and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), 78r and 78t(a); sections 15 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77o and 77q; and common law principles of fiduciary duty.

Jurisdiction is founded on § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; § 22 of the Securities Act of 1933, 15 U.S.C. § 77v; and diversity of citizenship, 28 U.S.C. § 1332 (1970).

Notwithstanding the changes since denial of the previous motion for class certification, the plaintiff has still not established that he can fairly and adequately represent the proposed plaintiff class. Accordingly, the requirements of Rule 23(a)(4) are not met, and the plaintiff's motion for class certification is DENIED.

Because of the court's findings with regard to Rule 23(a)(4), it is not necessary to consider the arguments on typicality of the plaintiff's claims, Rule 23(a)(3), or the superiority of the class action form, Rule 23(b)(3).

The defendant[1] has attacked the adequacy of the plaintiff's representation of absent parties on several grounds. The defendant asserts that Mr. Schatzman was improperly solicited to be a plaintiff in place of the disqualified trustees; that Mr. Schatzman has no personal knowledge of the events underlying the suit and will be improperly influenced by class counsel; that Mr. Schatzman has business relations with class counsel which create a disabling conflict of interest; that Mr. Schatzman has no financial stake in the litigation; that the former trustees' offer to maintain the suit is improper; and that absent the former trustees' uncertain offer to fund the costs of the suit, the trust and Mr. Schatzman are unwilling or unable to commit sufficient funds to cover the costs of notice to the putative class.

At the outset, it should be noted that the burden is on the party seeking class certification to show that he will fairly and adequately represent the proposed class. A determination of adequacy of a class representative is within the discretion of the trial court. *Walker v. Jim Dandy*, 638 F.2d 1330 (5th Cir. 1981).

The requirement that "the representative parties will fairly and adequately protect the interest of the class" plays a crucial role

---

1. Although there are eight named defendants, only Ernst & Whinney filed briefs and argued on the instant motion.

in the class action scheme of Rule 23. *du-Pont v. Wyly,* 61 F.R.D. 615, 621 (D.Del. 1973). Judge Weinstein has explained the approach a court should adopt in applying this rule as follows:

> ... members of the class not before the court are bound unless they affirmatively exercise their option to be excluded from the action. They may find themselves bound even though they were not actually aware of the proceeding. In such circumstances, the contention that adequate representation is lacking becomes weighty and "the interests of the affected persons must be carefully scrutinized to assure due process of law for the absent members." [cites omitted] ... the court must be assured that "the representatives [will] put up a real fight." [cites omitted]

*Dolgow v. Anderson,* 43 F.R.D. 472, 493–4 (E.D.N.Y.1968).

■ In scrutinizing the class representatives, courts focus on two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), cited in 3B J. Moore Federal Practice, ¶ 23.07 (2d ed. 1980).

■ But "the primary criterion is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Mersay v. First Republic Corp.,* 43 F.R.D. 465, 470 (S.D.N.Y.1968). Accordingly, courts will inquire into the personal characteristics and integrity of the proposed plaintiff and class counsel. Courts will also consider the knowledge and involvement of plaintiff with the suit, and the skill of counsel as some of the factors relevant to a determination of a plaintiff's adequacy as a class representative.

■ Under *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2410, 40 L.Ed.2d 732 (1974), and *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), a class plaintiff must bear the costs of identifying and notifying the class members of a suit's existence. Therefore, although some courts are reluctant to undertake a detailed inquiry into the plaintiff's total financial resources, courts must at least determine that the plaintiff can defray the costs of notice to the class.[2]

■ The inquiry into whether there is any antagonism between the interests of the plaintiff and the rest of the class blends into the inquiry into typicality under subsection (a)(3). Although Rule 23 states separate elements, Professor Moore suggests that 23(a)(3) is subsumed by 23(a)(4), 3B J. Moore, Federal Practice 7–23.06 (2nd ed. 1980). Following his suggestion, courts, including this one, will frequently merge the two discussions. However, it is often helpful to consider the question of subsection (a)(3) to be whether the legal claims, as pleaded, are co-extensive with those of other class members, while the inquiry under subsection (a)(4), if separately made, is whether there are circumstances or outside entanglements, other than a variation in elements of proof, which would affect the plaintiff's motivation or ability to prosecute the lawsuit as a fiduciary on behalf of the

---

2. "There have been instances in which a district judge has concluded that the representatives are inadequate, at least in part, because they do not appear to have the financing to maintain the action. But this is a rather tricky consideration that must be treated with some care because if financial capacity is emphasized, it may mean that poorer claimants will be prevented from maintaining class actions. Accordingly, discretion is required; although the ability to fund the case is a factor, it probably should not be a determinative factor." A. Miller, *An Overview of Federal Class Actions: Past, Present and Future* (Federal Judicial Center 1977) at 32, cited in *Roper v. Consurve, Inc.,* 578 F.2d 1106 (5th Cir. 1978) at n.4, *aff'd sub nom., Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *see also Sanderson v. Winner,* 507 F.2d 477, 479–80 (10th Cir. 1974).

class.[3] *See, e. g., Walker v. Jim Dandy*, 638 F.2d 1330 (5th Cir. 1981) (separate discussion of typicality); *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), *aff'd sub nom., Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), (separate discussion of adequacy). *See generally Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977). It is this latter inquiry the court undertakes here.

The defendants' contentions that Mr. Schatzman is an inadequate representative for the class must be evaluated in light of the diverse considerations set out above. A review of the cases shows that the defendants' allegations are standard fare when a plaintiff moves to certify a class in a securities fraud action. However, the facts of this case, involving a second motion for class certification by a trustee-plaintiff after the original trustee-plaintiffs were found inadequate to act as class representatives, are unique. These facts control the application of general principles here.

The court is satisfied that plaintiff's counsel has the requisite qualifications and experience to conduct complex security litigation. Any conflict of interest between Mr. Schatzman's role as class plaintiff and his role as a business associate of Mr. Young is obviated by Mr. Young's offer to withdraw as co-counsel. This offer would be accepted if a class is ever certified in this case.

Whether a plaintiff has interests antagonistic to the class is always a more complex question when, as here, the plaintiff is a trustee, suing on behalf of his beneficiaries. Such a plaintiff will never have the prototypical personal stake in the outcome of the litigation. Furthermore, questions will always arise over conflicts between the fiduciary obligations of the plaintiff to his beneficiary and the class, and the source of

funds for notice requirements and other costs of litigation.

This court adopts the view expressed by Judge Frankel regarding class actions brought by trustees:

> It is true, of course, that a trustee seeking to represent a class undertakes some risks and expenses incident to the effort. That is no less true of anyone, individual or organization, who applies to be a class representative. Most litigants attempting class actions do so upon calculations of advantage—notably, in an effort to have others in the class help them defray the burdens of large litigations. Every putative class representative must reckon with the costs and benefits for himself. There is no *a priori* reason why a trustee, in profound good faith, cannot attempt a similar estimate for his cestuis.

*State Teachers Retirement Board v. Fluor Corp.*, 73 F.R.D. 569, 571 (S.D.N.Y.1976).

The court finds that Mr. Schatzman's background as a bank president in Chicago, and his training as an attorney are qualifications which favor his claim to be an adequate representative for the proposed class. Mr. Schatzman's personal integrity has not been called into question.

Nor, under these circumstances, is the court concerned about Mr. Schatzman's personal knowledge of the events underlying the suit. His training and experience will allow Mr. Schatzman to be brought up to date with the history of the case. To hold otherwise would disable every trust from pursuing a claim where circumstances required substitution of a successor trustee.

Nonetheless, the court is concerned about the manner in which Mr. Schatzman was brought into the suit. Besides the business association with Mr. Young, already mentioned, he is related to the disqualified for-

---

**3.** For example, courts in class action securities fraud suits must be sensitive to the possibility of a strike suit or collusion between counsel and plaintiff. In this regard the practical observation of Judge Brieant is worthwhile: "Many class actions are brought . . ., but few

are tried to judgment. The risk of defending a class action is so great, and the damages are so multiplied, that experience has shown even those substantially lacking in merit tend to be settled along the way." *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y.1976).

mer trustees by marriage.[4] This relationship creates conflicts of interest between Mr. Schatzman's loyalties to the former trustees, the trust beneficiary and the other proposed class members.

The first area in which this difficulty surfaces is with the ability of the plaintiff to pay the costs of notice. Ordinarily, the plaintiff must pay these costs. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2410, 40 L.Ed.2d 732 (1974). Contrary to defendant's reasoning, however, that requirement cannot apply literally in the case of trustees, since it would make wealth a prerequisite for being a fiduciary. As a general rule, a trustee is under a duty to take *reasonable* steps (emphasis added) to realize on claims which he holds in trust. 2 Scott on Trusts § 177 Trustees may pay for litigation properly incurred out of the principal of the trust. 3 Scott on Trusts § 233.3. Furthermore, the specific provisions of the will of Ben H. Kornick appear to grant the trustees full powers to pursue claims such as this one, and to pay the costs of litigation with trust funds. *See also Clark v. Cameron-Brown Co.*, 72 F.R.D. 48 (M.D.N.C.1976).[5]

It appears to the court that the suggestion, stridently urged by defendant that the former or current plaintiffs were guilty of champerty or maintenance, ignored a trustee's obligation to pursue his beneficiaries' claims. Compare with, *Norman v. Arcs Equities, Corp.*, 72 F.R.D. 502 (S.D.N.Y.1976).

Although the trust might use its assets to fund this suit, as of July 7, 1981, the Kornick Trust held only $558.22 in cash and stocks. This amount is clearly inadequate to cover the costs of notice to the plaintiff class.[6] In addition to its liquid assets, the trust has potential claims against the former trustees. But the present value of these claims is a function of the probability that they will be successfully pursued.[7]

Two of the three former trustees took unauthorized, interest free loans from the trust. There is conflicting evidence on whether the loans were forgiven, or whether the money is still owing. *Kornick v. Talley*, 86 F.R.D. 715 (N.D.Ga.1980). There is also an offer of the former trustees, made to Mr. Young, co-counsel for the plaintiffs, to pay costs *in the event the case is not successful* (emphasis added).

The promise to pay costs if the suit is unsuccessful, is a far cry from an offer to pay notice costs which arise before any determination on the merits. Further, in evaluating the substantiality of the offer the court cannot overlook that the asserted promise is from parties who have taken money out of the trust for their personal use.

The plaintiff urges Mr. Schatzman's family loyalty to Mrs. Levin, the income beneficiary of the trust (see note 4, *supra*), as a primary reason why Mr. Schatzman will aggressively pursue the trust's claim against the defendants. The court finds that the same loyalty will apply, a fortiori, to the former trustees themselves, to whom Mr. Schatzman is even more closely related. *See Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977). The likelihood that Mr. Schatzman will pursue trust claims

4. Mr. Schatzman's wife is the sister of Jack Kornick's wife, so Jack Kornick and Mr. Schatzman are brothers-in-law. Mrs. Fanny Kornick Levin, the mother of Jack Kornick and Irving Kornick, two of the former trustees, is income beneficiary of the trust. Mr. Spreckman, the third trustee, is married to Lorraine Kornick Spreckman, sister of Jack and Irving Kornick. Jack and Irving Kornick and Lorraine Spreckman are remaindermen of the trust.

5. The question of a trust's involvement in a class action suit was considered only from a federal perspective. This court cannot speak authoritatively on applicable Illinois law governing trusts. Today's decision arises from presentations which, despite the court's inquiries to counsel, contain no relevant indication of Illinois law on the subject.

6. Plaintiff's counsel estimated the costs of notice at $5,000. (Transcript, hearing of July 7, 1981, at 15).

7. *See generally* H. Raiffa, *Decision Analysis, Introductory Lectures on Choices Under Uncertainty* (1970).

against the former trustees is too remote to give any real value to the claims.[8]

The insufficiency of funds to prosecute this case is an indication of the vigor with which the case would be pursued to conclusion. It could stand alone as a reason to deny class action status. *See, e. g., Parker v. George Thompson Ford, Inc.,* 83 F.R.D. 378 (N.D.Ga.1979); *P.D.Q., Inc. v. Nissan Motor Corp.,* 61 F.R.D. 372, 377 n.5 (S.D.Fla. 1973), *aff'd sub nom, In re Nissan Antitrust Litigation,* 577 F.2d 910 (5th Cir. 1978), *cert. denied, P.D.Q., Inc. v. Nissan Motor Corp.,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979).

A second area of difficulty is that, unlike the fiduciary before Judge Frankel in *State Teachers Retirement Board, supra,* there is no indication that Mr. Schatzman has made an independent assessment of the wisdom of bringing this suit on behalf of the trust. At oral argument on the instant motion, plaintiff's counsel acknowledged that "there were emotional factors that entered into [the former trustees'] decision to bring suit..." (Transcript, hearing of July 7, 1981 at 15). Under the specific facts of this case the court is not convinced that Mr. Schatzman's loyalty to the former trustees may not cloud his own, unemotional assessment of the wisdom of his brother-in-laws' earlier decision to bring suit.

The plaintiff cited *Wellman v. Dickinson,* 79 F.R.D. 341 (S.D.N.Y.1978), for the proposition that a third party may offer to make up any financial insufficiency of a trust bringing a class action. In that case the third party was the trust beneficiary and dissolution of the trust was "in all likelihood" imminent. Responding to the defendants' arguments that the imminent dissolution of the trust rendered it an unfit plaintiff, the court indicated that upon dissolution the beneficiary would be substituted for the trustee as the plaintiff. Thus, it was only a matter of time before the beneficiary was involved in the suit anyway.

The remaindermen of the Kornick Trust are two of the former trustees and the wife of the third former trustee. The court need not decide under what conditions other than those in *Wellman, supra,* a trust beneficiary might be allowed to fund the costs of class action litigation on behalf of his trust. But, where the beneficiaries have already been found to be inadequate class plaintiffs, such an arrangement cannot be sanctioned.

The court also considers it significant that, as the court in *Wellman, supra,* pointed out, should the trust end during the litigation the remaindermen would be substituted as the plaintiffs. Since these remaindermen here have already been found to be inadequate class representatives the class would have to be decertified.

The court recognizes the importance of class actions as a mechanism by which those who have suffered small injuries can band together for the purpose of vindicating their rights. The court has carefully considered the policy of liberality which has been advocated in 10b–5 suits. *See Blumenthal v. Great American Mortgage Investors,* 74 F.R.D. 508, 515 (N.D.Ga.1976); *Robinson v. Penn Central Co.,* 58 F.R.D. 436 (S.D.N.Y.1973). Nonetheless, certification must be denied.[9]

---

**8.** It is true Mr. Schatzman, as trustee, would also have fiduciary duties to the former trustees who are remaindermen to enlarge the trust. But this interest would seem to be overborne by these remaindermens' interest in not being sued in their capacity as former trustees.

**9.** The plaintiff has pointed out that should he be found an inadequate representative, the Circuit Court of Cook County may appoint yet another trustee to prosecute this claim. The court does not wish to penalize an innocent trust beneficiary. But because of this concern, a trust may not switch trustees, or wait for a renewal of trust assets without end until a sufficient case is made for class certification. In considering any future motions for class certification one factor that becomes increasingly relevant is whether an innocent trust beneficiary is in fact being harmed. In this regard the court notes that Mrs. Levin, the income beneficiary, stated in connection with the transfer of trust assets to her sons that she has no interest in the trust income. The remaindermen of the trust are the former trustees, whose own actions prevented the certification of the class action by unauthorized borrowing of trust assets.

The denial of class certification need not be bottomed on any one of the factors set forth above. In view of the circumstances in the present record, the court finds the plaintiff is not able to fairly and adequately represent the proposed plaintiff class. This conclusion is without any finding of a lack of competence, integrity or fairness in Mr. Schatzman in his personal capacity. He remains free to act as trustee pursuant to the instructions of the Cook County Circuit Court, and to continue this suit as an individual action.

The plaintiff's motion for class certification is DENIED.