Jimmy L. MORRIS, Sr., et al., Plaintiffs,

v.

TRANSOUTH FINANCIAL
CORPORATION, et
al., Defendants.

No. CIV. A. 96–C–388–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 14, 1997.

George Daniel Evans, Birmingham, AL, for Jimmy L. Morris, Sr. and Cassandra E. Morris.

Richard H. Gill, John Fairley, McDonald, III, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, William A. Robinson, R. Carlton Smyly, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, for Transouth Financial Corp. and Associates Ins. Co.

## *MEMORANDUM OPINION AND ORDER*

CARROLL, United States Magistrate Judge.

### I. INTRODUCTION AND PROCEDURAL HISTORY

On January 29, 1996, the plaintiffs filed this action in the Circuit Court for Autauga County, Alabama against Transouth Financial Corporation (Transouth) and Associates Insurance Company (Associates) alleging that the defendants' policy of charging excessive amounts for collateral protection insurance (CPI) violates various provisions of state law. Specifically, the plaintiffs contend that the defendants' actions violate the Alabama Mini–Code (Counts I, II and III), and

constitute conversion (Count IV), breach of contract (Count V), breach of fiduciary duty (Count VI), fraud by suppression (Count VII), fraud by misrepresentation (Count VII), unjust enrichment (Count IX) and conspiracy (Count X). The case was removed to this court on March 1, 1996. It is currently pending before this court on a motion for class certification which was filed on December 6, 1996. A hearing was held on the motion on January 7, 1997.

## II.  FACTS [1]

During the time period relevant to this lawsuit, Transouth contracts have required the borrower to maintain CPI. Transouth has two different CPI programs, one for dwelling collateral and one for automobiles and mobile homes. Since June 1991, Associates has provided the master policies under which Transouth obtains forced placed dwelling insurance. During that time frame, the master policies for the forced placed automobile CPI were maintained through several different insurance companies. The plaintiffs' complaint relates to two secured loans which they obtained from Transouth. On April 26, 1989, the plaintiffs borrowed $22,258.94 from Transouth and pledged their home as collateral. The loan documents required the plaintiffs to insure their home against loss or damage and specifically provided that if the plaintiffs failed to keep the collateral insured, Transouth could purchase insurance for the collateral. On April 20, 1991, plaintiffs took out another loan with Transouth for $8,065.00 and pledged their Chevy Blazer as collateral. This loan was refinanced on August 20, 1992.

During the term of their car loan, the Morrises let the insurance coverage on both their home and their car lapse. According to the terms of the contract, Transouth was authorized to and, indeed, did obtain CPI on the collateral. During the term of the Mor-

rises' car loan, insurance and interest charges were placed on their car account in the sum of $1,030.00. This charge was required to be paid off during ten months at $103.00 per month. The insurance was placed through American Road Insurance on December 27, 1991 and back dated to become effective October 1991. The Morrises also were charged for CPI on their real estate loan. In September 1993, they were charged $425.00 for a policy back dated to begin on August 5, 1993. The insurance which was placed on the Morrises' real estate loan was under a master policy applicable to the entire State of Alabama using rates applicable to the policy for the state.

## III.  DISCUSSION

### A.  THE THRESHOLD REQUIREMENTS

Rule 23(a) of the Federal Rules of Civil Procedure specifies four prerequisites to maintaining the suit as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative party are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

The court will now examine each of the Rule 23(a) requirements to determine whether they have been met.[2]

### 1.  NUMEROSITY—Rule 23(a)(1)

The plaintiffs seek certification of a class of persons who, within six years of the filing of this lawsuit and while residents of the state of Alabama, were charged for collateral pro-

---

**1.** In stating the facts, the court takes into account the well-settled principle of law that while a court may look beyond the allegations of the complaint in determining whether a class should be certified, an assessment of the plaintiff's likelihood of success on the merits would be inappropriate. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722 (11th Cir.), *reh'g denied* 832 F.2d 1267 (11th Cir.1987).

**2.** The burden is on the party who seeks to certify a suit as a class action to show that the prerequisite of Rule 23(a) are established. *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 (11th Cir.1983); *Earnest v. General Motors Corp.*, 923 F.Supp. 1469, 1473 (N.D.Ala.1996).

tection insurance in connection with consumer installment transactions with the defendants. The defendants do not contest that the class meets the numerosity requirement

### 2. COMMONALITY—Rule 23(a)(2)

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. The threshold of commonality is not high. "Aimed at part in determining whether there is a need for combined treatment and a benefit to be derived therefrom, the rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (citations omitted). As one court has expressed the requirements of commonality under the Rule:

> Rule 23(a)(2) requires that the plaintiff show there are questions of law or fact common to the class. Yet not every question of law or fact must be common to every member of the class. The requirement is met if the questions linking the class members are 'substantially related to the resolution of the litigation even though the individuals are not identically situated.' Identical questions are not necessary and factual discrepancies are not fatal to certification. Rule 23(a)(2) may be satisfied if common questions of liability are present despite individual differences in damages.

*In re Workers' Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990) (citations omitted). As the defendants correctly note in their brief, the plaintiffs contend that Transouth wrongfully (1) obtained and charged plaintiffs for CPI based on the total amount of the loan as opposed to the value of the collateral; (2) charged the plaintiffs for the commissions paid to obtain CPI; and (3) obtained and charged plaintiffs for additional insurance on the collateral such as insurance to cover repossession and mechanics' liens. The defendants have viable arguments to make about ·the legal validity of these claims. It is clear, however, that the defendants engaged in a common course of conduct by placing the insurance and there are legal questions as

well as factual questions which are common to all class members. The court easily concludes that the commonality requirement is met.

### 3. TYPICALITY AND ADEQUACY OF REPRESENTATION—RULE 23(a)(3) & (4) [3]

The typicality and adequacy of representation requirements serve the important interests of protecting the legal rights of class members. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). The typicality requirement focuses on the interest of the class representative. As the United States Supreme Court noted in *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980), "the typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." Stated another way, typicality exists when a plaintiff's injury arises from or is directly related to a wrong to a class and that wrong includes the wrong to the plaintiff. *See In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996); see also *Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir.1986) (the claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs).

The adequacy of representation requirement focuses on the ability of the class representative to assert and defend the class with forthrightness and vigor. *Kirkpatrick*, 827 F.2d at 726; see also *American Medical Systems*, 75 F.3d at 1083 (adequacy of representation means the class representative has common interest with the class and will vigorously prosecute the interest of the class through qualified counsel). The inquiry whether the named plaintiff will ˙represent the class with sufficient forthrightness and vigor invokes questions about the financial status of the plaintiff, *see Schatzman v. Talley*, 91 F.R.D. 270, 273 (N.D.Ga.1981), and the competence of class counsel; *Griffin v.*

---

**3.** The inquiries of these requirements are essentially the same. *Coleman v. Cannon Oil*, 141

F.R.D. 516, 522 (M.D.Ala.1992).

*Carlin,* 755 F.2d 1516, 1532 (11th Cir.1985). The class representative's personal finances, however, are not especially important. A plaintiff of limited financial means can still be a class representative in a major class actions because counsel have a greater financial interest in obtaining successful resolution of a class suit than do the individual members. *See Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Thus, the subjective desire to vigorously prosecute the case is supplied by counsel. *Kirkpatrick,* 827 F.2d at 727. The adequacy of representation requirement also addresses concerns about the competency of class counsel and potential conflicts of interest. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. at 157, n. 13, 102 S.Ct. at 2370, n. 13. *Weiss v. York Hospital,* 745 F.2d 786, 811 (3d Cir.1984) ("adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the [representative] plaintiff must not have interests antagonistic to those of the class.")

In this case, the defendants do not complain about the competence of counsel. They do argue, however, that the plaintiffs are inadequate class representatives because they have abdicated control of the litigation to their counsel, because their claims are adverse to the class, and because the relief sought by the plaintiffs would damage the class. Each of the arguments will be discussed in turn.

### a. Abdication

■ The defendants contend that the plaintiffs have little knowledge of the case and that they have abdicated all of their responsibility as class representatives to their counsel. The evidence before the court demonstrates that the plaintiffs have been active participants in this litigation. They have hired counsel, they have been deposed, and they have a basic understanding about the nature of this lawsuit. They also testified they believe that the defendants did something wrong with regard to their insurance.

■ This court is convinced, after review of the applicable law, that the plaintiffs so-called abdication of responsibility to counsel and their alleged lack of knowledge does not affect their adequacy as class representatives. A court in deciding whether class representatives are adequate must take into account the facts and circumstances of each individual case. *Apanewicz v. General Motors Corp.,* 80 F.R.D. 672 (E.D.Pa.1978). In this case, we have an essentially unsophisticated consumer seeking relief from a finance company. We cannot expect, and the law does not demand, that a class representative understand the intricacies of finance and law before he or she is an acceptable class representative. It is not a requirement that representative plaintiffs have specific knowledge of the claims and issues in the action or that they play a personal role in the direction and management of the action. *See Lewis v. Curtis,* 671 F.2d 779, 789 (3d Cir.1982). Indeed, in a complex case such as this one, the plaintiff need not be intimately familiar with every factual and legal aspect of the case. He may rely on counsel to investigate and litigate the case and his reliance does not make him an inadequate representative. *See, e.g., Surowitz v. Hilton Hotels, Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (representative who had a limited grasp of English could not explain the statements in the complaint, did not know the defendants by name, or know the nature of the misconduct was adequate); *Snider v. Upjohn Co.,* 115 F.R.D. 536, 541 (E.D.Pa.1987). The class representatives are not inadequate on the basis of their knowledge and their relationship with counsel.

### b. Conflict

■ The second basis of the defendants' attack on the plaintiffs' adequacy as class representatives is an alleged conflict of interest. According to the defendants, the plaintiffs seek to eliminate the practice of placing gap insurance on the entire collateral. As the court understands the plaintiffs' complaint, however, plaintiffs seek to enjoin practices of the defendants which would violate state law. The court, at this point in the litigation, does not see any conflict which would make the Morrises inadequate class representatives.

### c. Finances

The last argument which the defendants make concerning the class representatives is that they lack the resources to pursue this action. As noted previously, the finances of the class representatives are not particularly important. *Deposit Guaranty Nat' Bank v. Roper, supra.* While a class representative's financial state is a relevant inquiry, the ability to fund a case should not be a determinative factor. *Id.,* 578 F.2d at 1112 n. 4. Were this court to adopt the view of the law urged by the defendants, poor claimants or claimants with less than a substantial income would be prevented from being class representatives. *Schatzman,* 91 F.R.D. at 273 n. 2.

The court is convinced, after a review of the record in this case, that the class representatives have the interest, ability and desire to adequately represent the class for which they seek certification and that their claims are typical as that term is defined by the applicable case law. The court finds that the requirements of Rule 23(a)(3) & (4) are satisfied.

### B. THE RULE 23(b) REQUIREMENTS

The plaintiffs seek certification of a class under the provisions of Rule 23(b)(1)(A), (b)(2) and (b)(3).

#### 1. RULE 23(b)(1)(A)

Rule 23 (b)(1)(A) provides for class certification when the prosecution of separate actions by or against individual members of the class would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Although the plaintiffs attempt to place an injunctive and declaratory relief gloss on this case, it is clear to the court that this is primarily and principally an action to recover money damages. As such, it is inappropriate for certification under Rule 23(b)(1)(A). *See In re Dennis Greenman Sec. Litig.,* 829 F.2d 1539, 1545 (11th Cir.1987).

#### 2. RULE 23(b)(2)

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." As the case law makes clear, class certification under Rule 23(b)(2) is inappropriate where the final relief sought relates predominately to money damages. *Boughton v. Cotter Corp.,* 65 F.3d 823 (10th Cir.1995); *Vaughter v. Eastern Air Lines Inc.,* 817 F.2d 685, 690 (11th Cir.1987). Although injunctive and declaratory relief are mentioned, this case relates predominately to money damages. Consequently, certification under the provisions of Rule 23(b)(2) would not be appropriate.

#### 3. RULE 23(b)(3)

Under Rule 23(b)(3), a class may be certified "if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is a superior to other methods for the fair and efficient adjudication of the controversy." The court will first address the predominance requirement of the rule.

#### a. Predominance [4]

The determination of whether common questions predominate "involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis." Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1771 at p. 519. In this case, the overarching issue is whether the defendants' practice of force placing insurance which is constant across the spectrum of the class is illegal. In the face of what is obviously an overarching common issue, the defendants argue that there are various individ-

---

4. The plaintiffs no longer insist that fraud claims be certified. Consequently, there will be no discussion of the problems attendant to the certifi- cation of a class on such claims. *See generally Mack v. General Motors Acceptance Corp.,* 169 F.R.D. 671 (M.D.Ala.1996).

ual differences which dwarf the overarching common issue.[5] The defendants, as is to be expected, have characterized this as case where the individual issues outweigh the common ones. Many of the defendants' arguments are directed at the merits of the case. Obviously, at this stage, resolution of the merits would be inappropriate. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974)(a court may not consider the potential merits of the claim in determining the class certification issue). There are, however, three significant arguments which the court will specifically address.

### i. The Statute of Limitations Issue

The defendants contend that the plaintiffs will rely on the doctrine of fraudulent concealment to meet any timeliness arguments which the defendants may raise. The invocation of that doctrine, so the defendants' argument goes, would require individualized testimony from every class member. The defendants correctly note that such an individualized approach might well spell doom for the predominance requirement. The court agrees but that is not the end of the matter. The court understands from the plaintiffs' brief that they will not rely on the doctrine of fraudulent concealment. To the extent that there may be varying statute of limitations, the application of those statutes appears to the court to be a mechanical process which will not undercut the benefits of class treatments.

### ii. Damages

The defendants also complain that the fact that individual damage computations must be made destroys predominance. The plaintiffs, at this stage of the litigation, have convinced the court that the computation of class damages would be mechanical without the necessity for individualized hearings. However, even if individualized fact specific inquiry is involved, the issues common to the class still predominate. "Courts routinely find Rule 23(b)(3)'s predominance requirement satisfied despite the need for individualized dam-

age determinations when the 'fact' of injury is common." *Lockwood Motors Inc. v. General Motors Corp.,* 162 F.R.D. 569, 582 (D.Minn.1995) (citations therein). As a court in a different but related context has remarked

> If this court were to adopt defendants' argument and deny [the] class action [ ] because the computation of damages on even an individual basis destroys the predominance requirement of Rule 23(b)(3), it would be tantamount to encouraging wrongdoers to commit great antitrust violations on many consumers in small amounts so as to raise the spectre of unmanageability to defeat a class action.

*In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322, 354 (E.D.Pa.1976).

The court is satisfied, based on the record of this case, that the calculation of damages will not be so complex or individualized as to undercut the value of class treatment in this case.

### iii. Counterclaims

The defendants allege that there may be compulsory counterclaims which exist which will require individual trials, thus making class action treatment inappropriate. The plaintiffs counter with an argument that the existence of compulsory counterclaims is not a bar to a class action. In a recent decision, the Eleventh Circuit has indicated that in a proper case, the existence of counterclaims might defeat class certification. *See Heaven v. Trust Co. Bank,* 118 F.3d 735, 738 (11th Cir.1997). *Heaven* counsels that a court must consider the nature of the counterclaims in deciding whether to certify a class.

In this case, the defendants indicate that counterclaims may exist against putative class members who have not fulfilled their contractual obligations. At this point, there is no indication as to how many class members may be the subject of these counterclaims. The court declines to deny certification based on speculation about the number of potential counterclaims. *See Roper v.*

---

**5.** Defendants' Brief in Opposition to Plaintiffs' Motion for Class Certification filed January 3, 1997 at 43–71.

*Consurve, Inc.*, 578 F.2d 1106 (5th Cir.1978), *aff'd*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). If there are a significant number of class members who would be subject to counterclaims, then a subclass may be appropriate. *See* Fed.R.Civ.Proc. 23(c)(4). If the number of class members subject to counterclaims is large, then the class definition could be amended to remove them. At this point, there is no indication that counterclaims pose a significant obstacle to class certification.

This is a consumer case arising out of allegedly unlawful business practices. In consumer cases, generally, and in particular this case, "[T]he question of whether the defendant engaged in an improper course of conduct typically will be the same for all class members. As a result, common questions will predominate...." Federal Practice and Procedure: Civil 2d § 182 at pp 55–56. In the words of the Eleventh Circuit ... these claims involve common issues that clearly overwhelm the individual issues that may be present. Consequently, "[s]eparate actions by each of the class members would be repetitive, wasteful and an extraordinary burden on the courts." *Kirkpatrick*, 827 F.2d at 725 (citations omitted). The evidence before the court establishes that the questions of law and fact common to the class predominate over any questions affecting individual members. The plaintiffs have, thus, satisfied the first prong of the Rule 23(b)(3) inquiry.

### b. SUPERIORITY

■ As noted above, before a class action may be certified under Rule 23(b)(3), the court must find that the class action is superior to other methods for the fair and efficient adjudication of the controversy. This portion of the rule "requires the court to find that the objectives of the class action procedure will be achieved in the particular case." *Federal Practice and Procedure: Civil 2d: supra*, § 1779 at p. 551. One of the most

important objectives of the class action procedure is the aggregation of a small number of claims to allow for relief in situations where it might not otherwise be obtainable. As the Supreme Court has recently noted:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products, Inc. v. Windsor*, —— U.S. ——, ——, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997)(*quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997)). This case is a classic case for the use of the class action device—the claims of a large number of individuals can be adjudicated at one time and with less expense than would be incurred in any other form of litigation and the questions of law are questions that apply to each case. See *Roper v. Consurve*, 578 F.2d at 1112.

■ It goes without saying, however, that the class action device would not be superior if there were serious manageability problems arising out the case. *See Andrews v. American Tel. and Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir.1996); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996). In this case, there are no serious manageability problems. Plaintiffs have wisely chosen not to confront the problems attendant with the certification of a nationwide class or fraud claims. *See generally Mack v. General Motors Acceptance Corp.*, 169 F.R.D. 671 (M.D.Ala.1996), Instead, they seek only the certification of a statewide class on state law claims which do not involve fraud.[6] The class action device is plainly the superior method for resolving these consumer issues.

---

**6.** If, as the case goes forward, it becomes obvious that some of these claims are not appropriate for class treatment because they may involve too many individual issues, then the class may be decertified as to those claims. *See Fed.R.Civ.Pro* 23(c)(1). *See also Miera v. First Sec. Bank of*

*Utah, N.A.*, 925 F.2d 1237, 1241–42 (10th Cir. 1991); *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir.1983)(district courts are required to reassess their class rulings regularly as the case develops).

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion for class certification filed on December 6, 1996 be GRANTED and that the following class be certified under the provisions of Rule 23(b)(3) of the Federal Rules or Civil Procedure on all of the plaintiffs' claims except the fraud claims:

All individuals who, since March 1, 1990 were charged for collateral protection insurance in consumer installment transactions with the defendants while residents of the state of Alabama and whose consumer installment contracts do not require arbitration.[7]

The costs and burdens of preparing the notices and providing adequate notice to the class members shall be borne by the plaintiffs.

It further ORDERED that counsel confer and submit to the court within 30 days a proposed notice to the class.

---

7. It appears from the plaintiffs' most recent brief that they also seek certification of some sort of injunctive relief class. The court questions the necessity for such a class and this class definition does not include that class. It is clear to the court that the main thrust of this class action is to recover damages from the defendants. This class definition also references the six-year breach of contract statute. It is appropriate to give notice to this class because this will encompass all persons with claims. As previously noted, future subclasses may be required to take into account possible variations caused by the differing statute of limitations for claims other than breach of contract.