**Belle EFROS, Plaintiff,**

v.

**NATIONWIDE CORPORATION, et al., Defendants.**

Civ. A. No. C–2–82–1385.

United States District Court,
S.D. Ohio, W.D.

Aug. 5, 1983.

**704**

Guren, Merritt, Feibel, Sogg & Cohen, Kenneth R. Cookson, Columbus, Ohio, Gene Mesh, Cincinnati, Ohio, for plaintiff.

Ira Owen Kane, Columbus, Ohio, Jeffrey Davidson, Washington, D.C., for defendants.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLASS ACTION CERTIFICATION

SPIEGEL, District Judge:

### NATURE OF THE ACTION

This matter is before the Court upon the plaintiff's Motion for Class Action Certification (doc. 4), the defendants' Memorandum in Opposition (doc. 47) and the plaintiff's Reply Memorandum in Support (doc. 46). For the reasons which follow, we deny the plaintiff's Motion for Class Certification.

### QUESTION TO BE DECIDED

■ The question to be decided here is whether the plaintiff's Motion to have this action certified as a class action under Rule 23 Fed.R.Civ.P. should be granted. Preliminarily, we observe that the burden is on the plaintiff, the party seeking to utilize the class action device, to establish her right to do so. *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). In order to discharge this burden the plaintiff must first satisfy all four of the prerequisites found in Rule 23(a) and then establish further that the class she seeks to represent falls within one of the subcategories found in Rule 23(b). *Id.*

## FACTUAL BACKGROUND

The factual background in this matter has already been set forth in great detail in the Findings of Fact, Opinion and Conclusions of Law previously entered herein by Judge Rubin pursuant to Rule 52, in connection with his denial of the plaintiff's Motion for a Preliminary Injunction (doc. 20). Thus, it is not necessary that we discuss at great length the factual background out of which this case arose. Nevertheless, an abbreviated statement of the facts is in order. In reciting these facts, we refer expressly to the Court's prior Findings (doc. 20).

Briefly, the plaintiff was, until she surrendered her 51 shares on May 7, 1983 (doc. 48, Ex. 2), one of approximately 4,000 public holders of Class A common stock of Nationwide Corporation, an insurance holding company whose subsidiaries are engaged in the life insurance, accident and health insurance, and annuities businesses. Nationwide had two classes of common stock, Class A common and Class B common. Nationwide Mutual Insurance Company owned 85.6% of the Class A shares. The remainder of the Class A stock was held by approximately 4,000 public holders.

In September, 1982, Nationwide Mutual approached Nationwide's Board of Directors regarding a merger of Nationwide and First Plaza Corporation, a wholly owned subsidiary of Nationwide Mutual. Under the terms of the proposed merger, Nationwide Mutual and Nationwide Mutual Fire were to become the sole shareholders in Nationwide, with Nationwide's public shareholders receiving cash for their Class A shares. In connection with the proposed merger, Nationwide Mutual retained the services of First Boston Corporation. First Boston examined the financial records of Nationwide Corporation and determined that $42.50 represented a "fair and equitable" price for the publicly owned Class A

shares. The Board of Directors for Nationwide Corporation voted unanimously in November, 1982 to enter into the Agreement of Merger with First Plaza. The "cash out" price of $42.50 per share was approved. Thereafter, a proxy statement was sent out on December 9, 1982 to all Nationwide shareholders informing them of the proposed merger. The proxy statement also notified the shareholders that a special meeting would be held on January 18, 1983 for the purpose of voting upon the proposed merger.

The plaintiff sought to enjoin this special meeting (doc. 6). The Motion for Preliminary Injunction was denied by Judge Rubin (doc. 16), the meeting went forward as scheduled, and the merger was overwhelmingly approved.

The plaintiff, in her Amended Complaint (doc. 8), alleged that the tender offer lacked a valid business purpose and was grossly unfair, fraudulent and inequitable. She also alleged that the proxy materials were insufficient as there was not a full and fair disclosure of "material facts," in violation of § 10(b) and § 14(a) of the Securities Exchange Act of 1934.

The plaintiff filed her Motion for Class Action Certification on November 17, 1982 (doc. 4) seeking to represent all the Class A stockholders of National Corporation (other than the Executive Officers and Directors of Nationwide Corporation and Nationwide Mutual Insurance Company). At the special meeting, 537,789 (or approximately 78.4%) of the 685,545 publicly held Class A common shares were voted. Of these, 509,020 (or approximately 94.7%) were voted in favor of the merger (doc. 48, Ex. 2). Despite this fact, the plaintiff on behalf of the Class seeks to have the merger rescinded.*

## DETERMINATION OF THE ISSUES

As already stated, the burden of proof to establish the right to use the class action form rests with the plaintiff. *Senter, supra.* The Sixth Circuit in *Senter* clearly indicated that, as a preliminary matter, a prospective class representative must first satisfy all four of the prerequisites found in Rule 23(a). Rule 23(a) requires a showing that (1) the class is so numerous that joinder of all members would be impracticable, (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) that the representative parties will fairly and adequately protect the interest of the class. In addition, the plaintiff, having satisfied the above prerequisites, must further show that her action fits within one of the subcategories of Rule 23(b).

There is obviously no problem with numerosity in this case. Rule 23(a)(1) therefore does not stand as a bar to certification. With respect to (a)(2) and (a)(3), however, the commonality and typicality requirements, there is a closer question.

## COMMONALITY AND TYPICALITY

The defendants argue that the only "claim" which the plaintiff has made is that the merger should be rescinded because the "cash out" price was too low. They argue that this "claim" cannot be said to be "common" to the class since the overwhelming majority of the putative class members affirmatively endorsed this price by voting in favor of the merger. The defendants go on to maintain that the remaining public shareholders who did not vote in favor of

---

* Plaintiff's counsel maintains that the plaintiff seeks monetary damages as well as rescission. This point has been raised in brief (doc. 46) and it was raised as well during the oral arguments to this Court held on July 1, 1983. Plaintiff's counsel, in support of this position, points to the fact that in both her original Complaint as well as in her Amended Complaint, the plaintiff requested monetary damages. Nevertheless, the defendants correctly observe that the plaintiff herself has repeatedly insisted that her only goal is to have the merger rescinded (Efros Deposition, Tr. 84 and 85). In addition, she specifically stated that she did not want damages under any circumstances (Efros Deposition, Tr. 84). We have found no case authority dealing with the subject of a conflict between what a plaintiff says and what his or her attorneys may say. Still, we are inclined to listen to the plaintiff since she is, after all, the person who has allegedly suffered the harm and who has invoked this Court's aid.

the merger have implicitly endorsed its terms in two ways, by not filing an appraisal action in Ohio state court and by failing to intervene in this lawsuit.

In much the same way, the defendants insist that the plaintiff's claim cannot, in any way, be said to be "typical" of the claims of the class, the theory again being that the plaintiff is essentially alone in her attempt to force rescission of the merger.

The plaintiff counters these arguments by simply stating first of all that there are questions of law or fact common to the class since the proxy materials and merger terms were identical in the case of every public Class A holder. From this statement, the plaintiff argues that there can be no variance in either the factual or the legal issues presented.

Regarding typicality, Rule 23(a)(3), the plaintiff similarly argues that her claim is necessarily typical of the claims of the other class members for the basic reason that the defendants' conduct was directed not toward her alone, but rather toward all of the public Class A shareholders. In essence, the plaintiff seems to be arguing that since all Class A shareholders were injured by the same course of conduct, her claims are *a fortiori* "typical" of the class claims.

The plaintiff, in so arguing, skirts the defendant's essential contention that she is isolated in her request for rescission. The defendants have voiced genuine concerns in both the commonality and typicality areas, concerns which we believe merit serious consideration. These concerns, however, are more properly considered in connection with a discussion of the "fair and adequate representation" requirement of Rule 23(a)(4).

## FAIR AND ADEQUATE REPRESENTATION

In *Davis v. Comed, Inc.,* 619 F.2d 588 (6th Cir.1980) the Sixth Circuit recently had occasion to consider the "fair and adequate representation" of Rule 23.1, the Rule pertaining to shareholder derivative actions. The Sixth Circuit, in language very instructive here, stated:

The courts have examined several factors or elements in determining whether a particular derivative plaintiff can provide the requisite fair and adequate representation. Typically, the elements are intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1 (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion). Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are: economic antagonisms between representative and class; the remedies sought by plaintiff in the derivative action, indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendant; and finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

619 F.2d at 593–94.

It is, of course, true that *Davis* involved a shareholder's derivative suit and not a pure Rule 23 class action. This fact, however, is of minor consequence since the same concern for "fair and adequate representation" is involved in each case. The Sixth Circuit in *Davis* apparently saw no conflict as it leaned heavily on several class action decisions from other jurisdictions, including particularly *Guttmann v. Braemer,* 51 F.R.D. 537 (S.D.N.Y.1970), a case which we will discuss herein.

Carefully reviewing the record before us, and using the criteria set forth in *Davis, supra,* we conclude that Ms. Efros, the plaintiff in this case, would not fairly and

adequately represent the other former Class A shareholders.

## "DRIVING FORCE"

In the first place, we are greatly troubled by the fact that both the Complaint and the Amended Complaint were filed well before Ms. Efros ever spoke with or retained any of the attorneys who are representing her in this case. Specifically, we find that the Complaint was filed on November 9, 1982, in Ms. Efros' name. It is uncontroverted that this filing came nine days before Nationwide Corporation and First Plaza Corporation signed their Agreement of Merger (doc. 48, Ex. 3, pp. I–1 to I–5). It was also at least six weeks before Ms. Efros, by her own account, spoke with or retained counsel (Efros Deposition, Tr. 30). Ms. Efros also testified that she was aware that in November, 1982 her attorneys had arranged for a stipulation which allowed the filing of an Amended Complaint in her name. (Efros Depo., Tr. 46–47). Like the defendants, we too find it curious that the filing of this Stipulation came some weeks before Ms. Efros or her attorneys had an opportunity to see the December 9, 1982 proxy material.

In any event, the First Amended Complaint was thereafter filed in Ms. Efros' name on December 20, 1982, still some days before Ms. Efros spoke to or retained counsel.

Reviewing the contents of the first Amended Complaint (doc. 8), we find that many of the claims made by her attorneys are claims that Ms. Efros herself does not want to pursue. For example, as the defendants have correctly pointed out, the First Amended complaint alleges that Nationwide's proxy materials contained false and misleading statements (doc. 8, ¶¶ 28–29). Ms. Efros, however, has stated under oath at deposition that she was not aware of any statements in the proxy materials which were false or misleading (Efros Depo., Tr. 118). In the same way, the First Amended Complaint includes a request for damages. Ms. Efros, however, as previously stated herein, was quite certain that she did not "want any damages under any cir-cumstances" (Efros Depo., Tr. 84) and that there was no remedy besides rescission which she desired (Efros Dep., Tr. 84).

Along these same lines, we find that on December 20, 1982, the date of the filing of the First Amended Complaint, a Motion for Preliminary Injunction was also filed in Ms. Efros name, this again at least several days before Ms. Efros ever contacted counsel.

Likewise, the Motion for Class Certification, which is the matter before us here, was filed before Ms. Efros ever contacted or retained counsel.

Other facts are curious as well. For example, we find that Ms. Efros stated at her deposition that she had never heard of Mr. Kenneth Cookson, an attorney who has entered an appearance herein and who has been designated as "Trial Attorney" for Ms. Efros (Efros Depo., Tr. 22). Similarly, the plaintiff has testified that she did not retain either Mr. Gene Mesh or Richard Wayne, two additional attorneys who have entered appearances on her behalf (Efros Depo., Tr. 19). The plaintiff has also testified that she did not consent to or even have knowledge of the hiring of Mr. George Dormer, an expert witness who is charging her $225.00 per hour (Efros Depo., Tr. 64–65). Finally, we note Ms. Efros' deposition statement that because she was unhappy with the merger price she decided to "go ahead and exercise my [her] appraisal rights" (Efros Depo., Tr. 58). Those wishes were, however, somehow never carried out.

All of the foregoing suggests very strongly to this Court that Ms. Efros is not the "driving force" in this litigation. *Davis*, 619 F.2d at 593 and 594. In addition, we are seriously troubled by the "unfettered discretion" which Ms. Efros has given to her attorneys. *See e.g., In re Goldchip Funding Co.*, 61 F.R.D. 592 (M.D.Pa.1974). *See, also, Apanewicz v. General Motors Corp.*, 80 F.R.D. 672, 678 (E.D.Pa.1978); *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 487 (N.D.Cal.1978). This "unfettered discretion" reinforces the suggestion that someone other than the plaintiff is the "driving force" in this case. This Court is

simply unable to understand and certainly unwilling to accept so many "curious facts."

Turning our attention to some of the other criteria set forth in *Davis*, we again find problems. For example, the Sixth Circuit in *Davis* spoke of "plaintiff's unfamiliarity with the litigation," "the degree of support plaintiff was receiving from the shareholders he purported to represent," "economic antagonisms between representative and class," and "the remedies sought by plaintiff." *Id.*, at 593. Examining the facts of this case in light of these criteria, we find that a denial of class certification is unquestionably called for.

## UNFAMILIARITY WITH LITIGATION

As previously observed, Ms. Efros has never even heard of her designated "Trial Attorney," Mr. Cookson nor of Mr. Dormer, her expert witness, whom she is paying at the rate of $225.00 per hour. It appears that she has not attended any of the court proceedings which have been held to date. At the February 7 deposition, she acknowledged that she had never seen the Agreement of Merger (Efros Depo., Tr. 46). She also acknowledged that she was unaware that First Boston Corporation, an independent financial expert, had conducted an evaluation of Nationwide's operations and he proposed and recommended the $42.50 price as a "fair" price. (Efros Depo., Tr. 72–73). We recognize, of course, that a plaintiff in a securities case such as this is entitled to rely on the advice and knowledge of counsel. Indeed, plaintiff in a case such as this must so rely. The cases cited in the plaintiff's brief (doc. 46) make this point clear. Nevertheless, we are troubled by the plaintiff's glaring lack of familiarity with the facts of this litigation. We expect a proposed class representative to have at least some knowledge of his or her suit. While we do not decide the question of certification solely on this ground, it certainly is a factor which weighs on the side of denial.

## DEGREE OF SUPPORT

The "degree of support" which a proposed representative has is, as previously noted herein, very important. *Davis*, 619 F.2d at 596. Ms. Efros testified at deposition that she was unaware of any stockholder who supported her position. (Efros Depo., Tr. 74). The evidence of record confirms that this is essentially the case. No other stockholder has instituted a similar action. No stockholder has sought to intervene in this action. As we noted earlier, approximately 80% of the publicly held Class A shares were voted at the special meeting. Of these, nearly 95% were voted in favor of the merger. The defendants have attached a number of affidavits from individuals and businesses who voted their shares in favor of the merger and who state that they do not want the merger to be rescinded. By contrast, the plaintiff has only recently been able to find one other shareholder to support her in this otherwise very lonely venture. (doc. 46, Ex. 8). Thus, we observe that the plaintiff is virtually alone in this matter. That fact, too, weighs in favor of a denial of a certification.

## ANTAGONISTIC INTERESTS

The general lack of support which the roughly 4,000 other public Class A shareholders have shown for the plaintiff's action also suggests that the plaintiff's interests would be antagonistic to those of the vast majority of the putative class members. Certainly the affidavits alluded to above show rather strikingly the validity of this statement.

In *Guttmann v. Braemer*, 51 F.R.D. 537 (S.D.N.Y.1970), a case very much on point, the Court denied class certification primarily on the basis that the relief sought by the plaintiff in that case, namely rescission, might well be at odds with the relief which many of the other shareholders would want. The lack of any showing that all members wanted the same relief was specifically cited in the court's decision. *Id.* at 539.

Citing Herbert Newberg's treatise *Class Actions*, the plaintiff seeks to distinguish *Guttmann*. 5 Newberg, *Class Actions* § 8818b. The plaintiff argues that the possible differences in relief sought should not

bar certification where the liability question is common to all class members. The plaintiff states that the problem of differing remedies could be easily handled by means of subclasses or by means of Rule 23's opt out provision. We do not find the plaintiff's arguments to be persuasive. First, we question whether the use of subclasses would be feasible or even possible in this case. In addition to the conceptual difficulty of rescinding the merger for some but not for all, we are struck by the Sixth Circuit's clear approval of *Guttmann* in *Davis*. The Sixth Circuit's concern with the possibility of conflicting remedies in *Davis* is further evidenced by the Court's additional citation of *Schnorbach v. Fuqua,* 70 F.R.D. 424 (S.D.Ga.1975); *William Penn Man. Corp. v. Provident Fund for Income, Inc.,* 68 F.R.D. 456 (E.D.Pa.1975) and *Tober v. Charnita, Inc.,* 58 F.R.D. 74 (M.D.Pa. 1973), all cases in which the same concern was voiced. We too share this concern. Thus, even if it could be said that another group of shareholders desired monetary damages and not rescission, and we are not convinced that this is the case here, the conflict in remedies would, under the above analysis, loom large. On balance, this too is a factor which weighs heavily against class certification in this case.

### DISPOSITION

For all of the foregoing reasons the Court finds that the plaintiff's Motion for Class Certification is not well taken. The plaintiff's Motion for Class Certification is, therefore, DENIED.

SO ORDERED.