**In re INSURANCE MANAGEMENT SOLUTIONS GROUP, INC. SECURITIES LITIGATION.**

**No. 8:00–CV–2013–T–26MAP.**

United States District Court, M.D. Florida, Tampa Division.

April 1, 2002.

Richard S. Davis, Foley & Lardner, West Palm Beach, FL, Douglas M. Hagerman, Foley & Lardner, Chicago, IL, for Insurance Management Solutions Group, Inc.

### *ORDER*

LAZZARA, District Judge.

Before the Court is Plaintiff's Motion for Class Certification (Dkt.89), Plaintiff's Notice of Filing Supplemental Authority (Dkt.90), the IMSG Defendants' Memorandum in Opposition and, in the alternative, Motion to Establish Class Period Cut–Off (Dkt.98), the Underwriter Defendants' Memorandum in Opposition (Dkt.99), Venture Capital's Response (Dkt.100), and the Correction of Scrivener's Error (Dkt.102). After careful consideration of the arguments made and the entire file, the Court concludes that class certification should be granted.

### Pertinent Background

Early in this securities litigation, the Court consolidated three proposed class actions. (Dkt.20). In that order, the Court also appointed two lead Plaintiffs: Muriel Goodman and Thomas Schmidt. (Dkt.20). Just six days before the motion for class certification was filed, the Court granted the withdrawal of Muriel Goodman as a named Plaintiff and class representative, leaving Thomas Schmidt as the lead Plaintiff. (Dkt.88).

Thomas Schmidt as the sole lead Plaintiff now seeks an order appointing him as class representative and certifying this action as a class. Plaintiff seeks certification pursuant to Federal Rule of Civil Procedure 23(b)(3) of the following class of individuals:

> All persons who purchased or otherwise acquired the common stock of Insurance Management Solutions Group, Inc. (IMSG) pursuant and/or traceable to the Initial Public Offering of IMSG completed on or about February 11, 1999. Excluded from the Class are defendants, members of the immediate family of each of the individual defendants, any subsidiary or affiliate of IMSG, the directors, officers and employees of IMSG or their subsidiaries or affiliates, any entity in which any defendant has a controlling interest and the legal representatives, heirs, successors, predecessors, in interest, affiliates, or assigns of any defendant.

(Dkt.89). Plaintiff asserts that Mr. Schmidt's interests do not conflict with the interests of the members of the proposed class.

Mr. Schmidt purchased IMSG stock from the Initial Public Offering (IPO) and suffered significant losses.[1] When Mr. Schmidt graduated from high school, he began driving dump trucks for his father. (Dkt. 98 Exh. A at pg. 55). He soon purchased some dump trucks of his own and continued in the trucking business for twenty-seven years. (Dkt. 98 Exh. A at pg. 55). From 1983 through 1991 he owned a fastener distributorship, turning it over to one of his sons when he left. (Dkt. 98 Exh. A at pg. 56). After taking a few years off, he helped one of his sons at his son's business called City Gym, from 1994 until 2000. (Dkt. 98 Exh. A at pg. 56).

---

1. He purchased 500 shares at $11.00 per share for a total investment of $5,500.00. (Dkt. 98 at Exh. A at pgs. 9, 27).

Mr. Schmidt answered interrogatories propounded by the Defendants and appeared for his deposition on January 25, 2002. (Dkt. 98 Exh. A). He testified at his deposition how he came to know about IMSG and the IPO. (Dkt. 98 at Exh. A at pgs. 13–18). He testified that he remembered four specific conversations he had with his attorneys about this case, beginning in either late 2000 or early 2001. (Dkt. 98 Exh. A at pgs. 46–52). Mr. Schmidt met personally with his counsel the day before he was deposed. (Dkt. 98 Exh. A at pg. 49). He testified that he had received and read a copy of the Amended Complaint and the interrogatories from his attorneys. (Dkt. 98 at Exh. A at pg. 57).

### Argument

Defendants attack the motion for class certification on one ground—that Thomas Schmidt is not an adequate class representative. Asserting that this action is "a classic example of lawyer-driven class action litigation," Defendants contend that he has little or no understanding of his claims or his responsibilities as lead plaintiff. (Dkt. 98 at pg. 2). Specifically, Defendants note, Mr. Schmidt does not understand "the business line incompatibility claim that serves as the fulcrum of his lawsuit." (Dkt. 98 at pg. 3). Adding to this lack of understanding, Defendants maintain, his reading the Amended Complaint and a few other materials is insufficient involvement for a lead plaintiff and that Mr. Schmidt should have read the motions to dismiss, responses, and court rulings. Three brief conversations between lead plaintiff and counsel[2] is inadequate involvement on the part of a lead plaintiff, argue Defendants. Finally, Defendants assert that Mr. Schmidt has no knowledge of the four settlement demands his attorneys made prior to his deposition.

Plaintiff addresses the issue of lead plaintiff's adequacy by establishing that Mr. Schmidt suffered the same injuries resulting from the same alleged misrepresentations and omissions of Defendants. Plaintiff asserts that a named plaintiff need not demonstrate the vigor to pursue the legal claims of the class, but rather plaintiff's counsel must exhibit that vigor. Plaintiff attached the firms' resumes to an affidavit in the file to support Plaintiff's assertion that counsel is adequate to represent a class in this action.

### Adequate Representation

As part of the fourth requirement of Federal Rule of Civil Procedure 23(a),[3] the named class representative must "fairly and adequately protect the interests of the class." See Fed.R.Civ.P. 23(a)(4). The named plaintiff or plaintiffs must meet two prerequisites independent of the requirements for plaintiff's counsel. First, the named plaintiff must not have interests antagonistic to the rest of the class. See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421 (1988). Second, the named plaintiffs must possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative. See id.

The only issue brought before this Court involves the second prerequisite—the personal characteristics of Mr. Schmidt as they relate to his ability to perform his duties as class representative. The Eleventh Circuit has articulated the standard by which this Court must assess the adequacy of a named plaintiff in a securities case:

> [I]n securities cases such as these, where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.

Kirkpatrick, 827 F.2d at 728. If one assumes there is a "perceived lack of subjective interest" on the part of Mr. Schmidt, then this Court must decide whether Mr. Schmidt's participation in this lawsuit has been so minimal that he has abdicated to his

---

**2.** This premise ignores the meeting between Mr. Schmidt and his counsel before his deposition.

**3.** Defendants do not take issue with the adequacy of representation on the part of Plaintiff's counsel.

attorneys the conduct of the case. This determination is a factual one. *See id.*

■ To make a finding of abdication, this Court must be convinced that Mr. Schmidt lacks the personal characteristics necessary to fulfill his duties as a class representative. With respect to the subjective desire to represent the class with vigor, this characteristic is often better displayed by counsel rather than the class members themselves. *See Kirkpatrick,* 827 F.2d at 727. The financial incentives attendant with a class action serve (1) the public interests in securities cases by the private enforcement of the regulatory scheme, and (2) the private interests of the class members by permitting a remedy which may not be feasible if sought in multiple individual suits for damages. *See id.*

The law does not require that Mr. Schmidt understand the details and means by which the Defendants perpetrated the alleged fraud. *See, e.g., Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807, (1966); *Powers v. Government Employees Ins. Co.,* 192 F.R.D. 313, 317–18 (S.D.Fla. 1998).[4] The courts look more at the willingness of the class representative to participate in the action. This willingness, however, may be expressed merely by the class representative's compliance with discovery requests such as answering interrogatories or showing up for a deposition and answering questions. *See Powers v. Government Employees Ins. Co.,* 192 F.R.D. 313, 318 (S.D.Fla.1998) (appeared for deposition, produced documents and conferred with counsel); *Alfred v. Okeelanta Corp.,* 1991 WL 177658 *14 (S.D.Fla. April 16, 1991) (appeared for deposition and responded to interrogatories).[5] Minimal actions such as having read the complaint and asserting that a wrong occurred, although not understanding the exact nature of the wrong, may constitute a sufficient showing of lack of total abdication to counsel. *See Morris v. Transouth Fin. Corp.,* 175 F.R.D. 694, 698 (M.D.Ala.1997).

Undoubtedly, circumstances may exist which would warrant courts to make proper denials of class certification based on the inadequacy of the class representative. *See Kirkpatrick,* 827 F.2d at 727 (citing as examples *Helfand v. Cenco,* 80 F.R.D. 1, 7–8 (N.D.Ill.1977) and *Efros v. Nationwide Corp.,* 98 F.R.D. 703, 707 (S.D.Ohio 1983)). In *Efros,* the class representative testified at her deposition that she did had never heard of one of her trial counsel who had appeared on her behalf. Ms Efros denied knowledge of any false or misleading statements which were the basis of the claim. She testified that she sought only rescission of the corporate merger, yet her counsel demanded she was interested in pursuing damages. These facts and others made it apparent to the court that the attorneys were the driving force behind the lawsuit.

In *Helfand,* one of the class representatives had no knowledge that he was a member of the class and had never read the complaint. Several other class representatives had no knowledge of the nature of the fraud, and the court found they did nothing other than give their names as plaintiffs. The *Helfand* court concluded that none of the class representatives who showed a lack of understanding even the basic wrong alleged in the complaint could serve adequately.

■ Having reviewed the facts of *Helfand* and *Efros* and various other opinions evaluating a class representative's adequacy, this Court finds that Mr. Schmidt possesses the necessary personal characteristics of a class representative by demonstrating a willingness to participate. Mr. Schmidt had several discussions with his attorneys, met with them before his deposition, attended his deposition and answered interrogatories. His lack of understanding of the intricate underpinnings of the alleged perpetrated fraud does not negate the fact that he knew he was wronged in the purchase of the stock. His lack of knowledge of the settlement demands in the

---

4. *See also In re Miller Indus., Inc. Sec. Litig.,* 186 F.R.D. 680, 687–88 (N.D.Ga.1999); *Morris v. Transouth Fin. Corp.,* 175 F.R.D. 694, 698 (M.D.Ala.1997); *Simon v. World Omni Leasing, Inc.,* 146 F.R.D. 197, 201–02 (S.D.Ala.1992).

5. *Cf. Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1231 (11th Cir.2000) (attorney agreed to class representative's inadequacy when class representative failed to appear at his deposition).

past may be cured by his counsel in future settlement discussions. In any event, settlement of a class action requires notice to all class members and a fairness hearing, and no prejudice to the class has shown by his lack of personal knowledge of the details of the settlement demands.

### Class Certification

The Court finds that Plaintiff established the four prerequisites under Rule 23(a). Given the finding that Mr. Schmidt is an adequate class representative, the parties appear to agree that certification under Rule 23(b)(3) is appropriate. Rule 23(b)(3) permits certification when common questions of law or fact predominate over individual questions and treatment as a class action is superior to other available means of adjudication. It is also well established that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Should other developments occur, the Defendants are free to raise the inadequacy of Mr. Schmidt as a class representative again. This Court will always revisit, upon proper motion, a determination of adequacy under Rule 23(a)(4). *See Gonzales v. Cassidy,* 474 F.2d 67, 75–76 (5th Cir.1973).

It is therefore **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Class Certification (Dkt.89) is **GRANTED**.

2. The following class is certified:

   All persons who purchased or otherwise acquired the common stock of Insurance Management Solutions Group, Inc. (IMSG) pursuant and/or traceable to the Initial Public Offering of IMSG completed on or about February 11, 1999. Excluded from the Class are defendants, members of the immediate family of each of the individual defendants, any subsidiary or affiliate of IMSG, the directors, officers and employees of IMSG or their subsidiaries or affiliates, any entity in which any defendant has a controlling interest and the legal representatives, heirs, successors, predecessors, in interest, affiliates, or assigns of any defendant.

3. The IMSG Defendants' Motion to Establish Class Period Cut–Off (Dkt.98) is **denied without prejudice** to refiling after further development of facts pertinent to the class period.