COASTAL NEUROLOGY, INC., Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

No. 10–60354–CIV.

United States District Court, S.D. Florida.

Nov. 30, 2010.

Cullin Avram O'Brien, Mark Jeffrey Dearman, Stuart Andrew Davidson, Robbins Geller Rudman & Dowd LLP, Eric Lee, Lee & Amtzis, P.L., Boca Raton, FL, Kimberly P. Simoes, The Simoes Law Group, P.A., Deland, FL, for Plaintiff.

Benjamine Reid, Carlton Fields, Miami, FL, Johanna W. Clark, Carlton Fields, P.A., Orlando, FL, for Defendant.

### ORDER ON MOTION FOR CLASS CERTIFICATION

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Class Certification, filed July 2, 2010 (the "Motion") (D.E. 41.) Defendant responded on August 13, 2010 (the "Response") (D.E. 55), and Plaintiff replied on August 30, 2010 (D.E. 69.) Also before the Court is Plaintiff's Motion to Strike Defendant's Opposition to Plaintiff's Motion for Class Certification, filed August 18, 2010 (D.E. 63.)

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

## I. Background

The issue in this case is whether State Farm Mutual Automobile Insurance Company's (State Farm) use of National Correcting Coding Initiative edits to limit providers' reimbursements violates Florida's No–Fault Law, Fla. Stat. § 627.736 (the "No–Fault Statute.")

### A. Parties

State Farm is an insurance carrier that sells No–Fault or Personal Injury Protection ("PIP") coverage (Am.Compl. ¶ 9.) Coastal Neurology ("Coastal") provides healthcare services to individuals covered under State Farm's No–Fault policies and bills State Farm pursuant to assignments of benefits (Am.Compl. ¶ 20.)

### B. Statutory Framework

Florida's No–Fault Statute is designed to provide insurance without regard to fault. Fla. Stat. § 627.731 (2006). Every policy under the No–Fault Statute must provide up to $10,000 for loss sustained as a result of "bodily injury, sickness, disease, or death arising out of ownership, maintenance, or use of a motor vehicle...." Fla. Stat. § 627.736(1).

### 1. Type of Reimbursements Permitted

Section (1)(a) provides that insurers must reimburse eighty percent of all "**reasonable** expenses for **medically necessary**" healthcare services (emphasis added). Section (5)(a) states that a provider may reimburse "**only reasonable amount[s]**" and only those amounts that appear on an invoice, bill or claim form that has been "**properly completed**" (emphasis added). Section 5(d) provides guidelines an insured or her provider must follow in order to submit a properly completed bill.

### 2. Permitted Limitations on Reimbursement Amounts

Pursuant to section (5)(a)(2), an insurer may limit reimbursement to 80% of "200 percent of a the allowable amount under the participating physicians schedule of Medicare Part B." Section (5)(a)(3) adds that, for purposes of subparagraph (2), "the applicable fee schedule ... under Medicare is the fee schedule

> in effect at the time the services, supplies, or care was rendered and for the area in which such services were rendered, except that it may not be less than the allowable amount under the participating physicians schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B."

Fla. Stat. § 627.736(5)(a)(3). This means that the applicable fee schedule for maximum charges for the current year must be compared with the applicable schedule for 2007, and the insurer must pay the higher of the two.

Pursuant to section (5)(a)(4), a provider may not apply the following three limits on reimbursements:

> limitation on the number of treatments ... [2] **utilization limits** that apply under Medicare or workers' compensation. An insurer ... must reimburse a provider who lawfully provided care or treatment under the scope of his or her license, regardless of whether such provider would be entitled to reimbursement under Medicare due to restrictions or [3] **limitations on the types or discipline of health care providers** who may be reimbursed for particular procedures or procedure codes.

Fla. Stat. § 627.736(5)(a)(4) (emphasis added).

## C. National Correct Coding Initiative Edits

The Centers for Medicare and Medicaid Services developed the National Correct Coding Initiative (NCCI).[1] The NCCI's goal is to "promote national correct coding methodologies and to control improper coding [of healthcare services] leading to inappropriate payment in [Medicare] Part B claims."[2] The purpose of NCCI edits is "to prevent improper payment when incorrect code combinations are reported."[3] NCCI edits exist for a wide range of healthcare services.[4]

A modifier is a two-digit code that further describes the health services performed.[5] Providers may include one or more of the thirty-five available modifiers in their bill to bypass an NCCI edit.[6] For example, a provider may bill for two services in an NCCI code pair and include a modifier that would override the edit and allow a reimbursement for both services.[7]

## D. Individual and Class Allegations

Coastal alleges that State Farm violates the No–Fault Statute by using NCCI edits to reduce and deny reimbursements to it and similarly situated healthcare services providers (Am.Compl. ¶ 24.) Coastal charged State Farm for services pursuant to the policy assignment of a State Farm policyholder ("Policyholder") who sought treatment at Coastal after sustaining injuries in an automobile accident (Am.Compl. ¶¶ 21–22.) Among the healthcare services Coastal billed State Farm for are those for which the service coded is 97124 (Am.Compl. ¶¶ 22.) Coastal alleges that pursuant to the No-Fault Law, State Farm was required to pay it 200% of the Medicare Part B Fee Schedule for the service; however, State Farm improperly applied an NCCI edit to reduce the reimbursement to zero (Am.Compl. ¶¶ 23–22.) Coastal has sued State Farm for breach of contract (Count 1) and declaratory judgment (Count 2) (See Am.Compl. ¶¶ 36–46 & 47–57.)

Coastal seeks an order certifying the following two classes—a class for each count in the Amended Complaint:

*Class for Count 1:* All Florida healthcare providers which obtained an assignment from a State Farm Insured and have claims for services rendered to State Farm insureds that were reduced or not paid based on the National Correct Coding Initiative edit database who submitted a written intent to initiate litigation under § 627.736(10), which was rejected by State Farm.

*Class for Count 2:* All Florida healthcare providers which have claims for services rendered to State Farm insureds that were reduced or not paid based on the National Correct Coding Initiative edit database.

Motion at 3 (additional emphasis added). Coastal asks this Court to certify the classes pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") and declare Coastal and its counsel as class representative and class counsel, respectively (Motion at 18.)

## II. Legal Standard

A Court may certify a class action only if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. *Gilchrist v. Bolger,* 733 F.2d 1551, 1555 (11th Cir.1984). A plaintiff seeking class certification carries the burden of proof. *Rutstein v. Avis Rent–A–Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir.2000). The plaintiff must prove that Rule 23(a) requirements are met and that at least one of the standards of Rule 23(b) is appropriate for

---

1. National Correct Coding Initiatives Edits, http://www.cms.gov/NationalCorrectCodInitEd/01_overview.asp#TopOfPage1.

2. *Id.*

3. *Id.*

4. *Id.*

5. Department of Health and Human Services, Office of Inspector General, *Use of Modifier 59 to Bypass Medicare's National Correct Coding Initiative Edits,* i (November 2005), http://www.oig.hhs.gov/oei/reports/oei–03–02–00771.pdf

6. *Id.*

7. *Id.*

the relief sought. *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir.2001).

Rule 23(a) contains an implicit, threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g., Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 649 (M.D.Fla.2001) (citing *De-Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")).[8] Rule 23(a) further contains four explicit prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). These elements are referred to as "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003). Additionally, a court may only certify a class action if at least one of the three alternative requirements of Rule 23(b) has been met. *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir.2000).

Certification of the damage class under Rule 23(b)(3) requires a plaintiff to establish that "the question[s] of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Certification of the injunctive class under Rule(b)(2) requires a plaintiff to show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

■ In determining whether to certify a class, a district court has broad discretion.

*Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug*, 350 F.3d at 1188 n. 15; *see also Hudson v. Delta Air Lines*, 90 F.3d 451, 457 (11th Cir.1996) (stating it is sometimes necessary to probe behind the pleadings before coming to rest on the certification question).

### III. Analysis

Coastal relies on the theory that every NCCI edit is impermissible without exception under section 627.736(5)(a)(4); thus, State Farm's use of NCCI edits to limit Coastal and the putative class members' reimbursements entitles Coastal and the class to money damages and declaratory and injunctive relief. State Farm argues that the question of whether NCCI edits are permitted boils down to individual inquiries about whether each provider is even entitled to a reimbursement and whether State Farm's use of a particular NCCI edit to reduce or deny the provider's reimbursement is permitted under section 627.736(5)(a)(4).

Accordingly, State Farm first and foremost argues that the Court cannot certify a damages class under Rule 23(b)(3) because the predominance and superiority requirements are not met. Second, State Farm contends that the Court cannot certify an injunctive class under Rule 23(b)(2) because there exists too many individualized facts relevant to determining the reasonableness of a claim for reimbursement. Third, State Farm argues that the putative class fails to meet the Rule 23(a) prerequisites of adequacy and typicality.

### A. Rule 23(b)(3) Requirements

Class certification of a damages class under Rule 23(b)(3) requires a plaintiff to show that "[1] questions of law or fact common to

---

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

members of the class predominate over any questions affecting only individual members, and [2] that class action is superior to all other available methods for the fair and effective adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance

■ To satisfy the Rule 23(b)(3) predominance requirement, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent–A–Car Systems*, 211 F.3d 1228, 1233 (11th Cir.2000). If the common issues of fact and law "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to ... relief," then the common issues of fact and law predominate. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir.2004). If after adjudication of the classwide issues, plaintiffs still needs to introduce a "great deal of individualized legal proofs or argue a number of individualized legal points to establish most or all of the elements of their individual claims," Rule 23(b) class certification is inappropriate.

Coastal contends that State Farm's use of NCCI edits to reduce or refuse reimbursements violates section 627.736 and this issue "clearly predominates because it affects every single member of the putative class" (Motion at 6.) State Farm argues that because each claim for reimbursement and each NCCI edit is different, the numerous issues subject to individual proof overwhelmingly outnumber the few general issues applicable to the class as a whole.

■ The common facts that Coastal and the class members share are that they have both provided health care services to State Farm's insureds and that State Farm has automatically applied NCCI edits to reduce or deny their claims for reimbursement. The common legal question is whether State Farm improperly applied NCCI edits to reduce or refuse their reimbursements. However, the fact that State Farm may have automatically applied NCCI edits to every bill that each service provider/putative class member submitted does nothing to establish that any individual provider was entitled to a reimbursement on any particular occasion and that a NCCI edit improperly reduced that reimbursement. *See Klay v. Humana*, 382 F.3d 1241 (11th Cir.2004) (the fact that the defendants conspired to underpay doctors, and that they programmed their computer systems to frequently do so in a variety of ways does nothing to establish that any individual doctor was underpaid on any specific occasion); *Rutstein*, 211 F.3d at 1235 ("Whether Avis maintains a policy or practice of discrimination may be relevant in a given case, but it certainly cannot establish that the company intentionally discriminated against every member of the putative class."); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir.1997) (holding that plaintiffs alleging racial discrimination had failed to show "predominance" because proof concerning the existence of a general policy of racial discrimination does not show whether an individual plaintiff was actually discriminated against); *Ramirez v. DeCoster*, 194 F.R.D. 348, 353 (D.Me.2000) (holding that plaintiffs "do not necessarily satisfy the requirement that questions of law or fact predominate merely by alleging a pattern or practice claim")

As was the case in *Klay*, regardless of whether State Farm followed a policy of automatically applying NCCI edits to every bill, each provider will still have to introduce individualized evidence to prevail in its breach of contract claim. For example, each service provider, for each alleged underpayment, i.e. each alleged breach of contract, must prove the following details about its entitlement to reimbursement: that the insured had valid insurance coverage and his benefits were unexhausted, that the provider actually performed the services for which it billed; that the treatment(s) the provider performed was "medically necessary" pursuant to section 627.736(1)(a), that the provider billed for "reasonable amount[s]" pursuant to section 627.736(5)(a), and that the bill the provider submitted was properly completed pursuant to section 627.736(5)(d). There are no common issues of fact that relieve each plaintiff of a substantial portion of this indi-

vidual evidentiary burden. *Cf. In re Terazosin Hydrochloride Litigation,* 220 F.R.D. 672, 694 (S.D.Fla.2004) ("[W]hen there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.") (internal quotations omitted).

In addition to being required to prove individual details about its entitlement to reimbursement, each provider would also have to prove that each NCCI edit impermissibly limited its reimbursement based on "the number of treatments," the "type of utilization," or "the type of provider." *See* Fla. Stat. § 627.736(5)(a)(4). This would require each provider to introduce individualized evidence. For example, an inquiry into whether an NCCI edit properly reduced reimbursement on a bill that charged for both removing an appendix and making an incision required to remove the same appendix is markedly different from an inquiry into whether an NCCI edit properly reduced a reimbursement on a bill that charged for both manual therapy and massage therapy administered to the same patient. Moreover, the factual inquiry into bills that included modifiers would be different compared to an inquiry into those lacking modifiers. Finally, the factual inquiry required to determine whether an NCCI edit impermissibly unbundled services would greatly vary between bills.

### 2. Superiority

In determining if the plaintiff has met the superiority element, courts consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

██ Coastal contends that superiority is satisfied for the following reasons: it would be extremely costly and judicially redundant for class members to bring separate actions; none of the putative class members has an interest in controlling their own litigation; and a class action would be easier to manage than numerous separate actions. State Farm argues that an inquiry into the permissibility of even one NCCI edit would require a file by file, bill by bill review that would make management of a class action difficult. It further argues that numerous NCCI actions filed in county courts throughout Florida indicate that members of the class have an interest in pursuing their action individually.

Coastal's arguments ignore the individualized nature of the inquiry. *See Perez v. Metabolife,* 218 F.R.D. 262, 273 (S.D.Fla. 2003). As the Court has already noted, an inquiry into the a provider's entitlement to a reimbursement and the permissibility of an edit that reduced that reimbursement would require the Court to scrutinize individually the details of each class member's claim for reimbursement and the corresponding edits. Therefore, management of a class action containing thousands of such claims would prove difficult. Furthermore, Coastal is incorrect in assuming that no class member has an interest in bringing its own action. The class member who is entitled to a reimbursement and whose reimbursement was limited by an impermissible NCCI edit under section 627.736(5)(a)(4) would surely favor bringing separate actions rather than joining with class members who may not be entitled to a reimbursement or those whose reimbursements were limited by permissible edits. Accordingly, Coastal has failed to meet its burden to establish superiority thus has failed to satisfy the Rule 23(b)(3) requirements.

### B. Rule 23(b)(2) Requirements

██ When deciding whether to certify the injunctive class under Rule 23(b)(2), the Court "must determine (1) whether Defendant has acted on grounds generally applicable to the class as a whole, and if so, (2) whether declaratory or final injunctive relief is the appropriate primary remedy [ ]." *Jones v. American General Life and Acc. Co.,* 213

F.R.D. 689, 698 (S.D.Ga.2002) (citing *In Re Managed Care Litig.*, 209 F.R.D. 678 (S.D.Fla.2002)). When, as here, a plaintiff seeks damages in addition to equitable relief, injunctive class certification is only appropriate if the money damages are "incidental to the requested injunctive or declaratory relief." *In re Consol. Non–Filing Ins. Fee Litigation*, 195 F.R.D. 684, 692 (M.D.Ala. 2000) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir.1998)). Money damages are "incidental" only when class members would be "automatically entitled" to them once class-wide litigation is established. *Id.*

Coastal argues that the Court should certify the injunctive class because State Farm's use of NCCI edits to reduce or deny reimbursements is automatic and uniform thus State Farm has acted on grounds generally applicable to the class of health care providers as a whole. State Farm contends that the presence of disparate factual circumstances relevant to determining the reasonableness of a claim for reimbursement precludes injunctive class certification.

■ Coastal and the putative class members seek both money damages and injunctive relief, however, Coastal has failed to demonstrate that the money damages are "incidental." Money damages are incidental if a court can calculate them using objective standards and not depend on subjective differences of each class member. *Allison*, 151 F.3d at 415. The plaintiffs should not have to introduce new and substantial legal or factual issues, nor engage in complex individualized determinations, and a court should not have to hold additional hearings to resolve the disparate merits of each individual's case. *Id.*

■ Damages for State Farm's underpayment or nonpayment of reimbursements is not a group injury requiring a group remedy. *See Id.* at 413 ("We know, then, that monetary relief "predominates" under Rule 23(b)(2) ... when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case."). A finding of class-wise liability in this case would not "automatically" entitle class members to a fixed, uniform damages recovery. *See Id.* at 415. Instead, the calculation of money damages would require individual resolution of the following questions relevant to each claim for reimbursement: what were the services performed; were the services medically necessary; what were the total reimbursements claimed; were the reimbursements reasonable; which of the available 650,000 NCCI edits did State Farm use to reduce the reimbursements; and how much of the reimbursement did each edit reduce. The plaintiff class members would have to introduce new factual details, such as whether each treatment was actually performed and whether each bill was properly completed. As a result, the Court would be unable to use objective standards to calculate money damages and would have to hold hearings to resolve these disparate issues. Accordingly, the money damages in this action are not "incidental" to the injunctive and declaratory relief thus the Court must deny injunctive class certification under Rule 23(b)(2).

## C. Rule 23(a) Factors of Adequacy and Typicality

### 1. Adequacy

■ The adequacy element requires representative parties to "fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). "This requirement involves an inquiry into whether the plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation, and whether the plaintiff has interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985).

Coastal contends that it is an adequate class representative for the following reasons: its counsel has experience handling complex class action lawsuits; and Coastal's interests are aligned with the class because both Coastal and the class has suffered from State Farm's application of NCCI edits to its claims for reimbursement. State Farm argues that Dr. Benezette, a member of Coastal's practice, does not understand the Complaint; thus Coastal is an inadequate class representative.

■ The Court finds that Coastal is an adequate class representative. A review of its counsel's resume reveals that he has the requisite knowledge and experience to lead the litigation. Moreover, Coastal's interest in seeking damages and injunctive relief for State Farm's use of NCCI edits is not at odds with the interest of the rest of the class. Finally, the Court is not persuaded that Dr. Benezette lacks sufficient familiarity with the Complaint to serve as an adequate class representative. *See In re Ins. Mgmt. Solutions Group, Inc. Sec. Litig.*, 206 F.R.D. 514, 517 (M.D.Fla.2002) (holding that plaintiff's lack of understanding of the claims' intricate underpinnings did not preclude him from being an adequate class representative).

## 2. Typicality

■ To fulfill the typicality requirement, the representative plaintiff's claims must be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). The representative plaintiff's interest must be aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citation omitted); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). The typicality requirement is met when in proving its case, the representative plaintiff establishes the element needed to prove the class members' case. *See Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D.Fla.1990); *see also Hillis v. Equifax Consumer Serv., Inc.*, 237 F.R.D. 491, 499 (N.D.Ga.2006) (citation omitted) ("Typicality cannot be satisfied when a named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.")

Coastal asserts that its claims are typical of the class because they arise out of State Farm's use of NCCI edits against it and putative class members. State Farm argues that Coastal is not entitled to a reimbursement in the first place because it engaged in double billing, impermissibly bundled services and submitted incomplete and inaccurate bills; thus Coastal is not typical. State Farm also argues that it is subject to the setoff or unbundling defense.

■ Coastal has failed to satisfy the typicality requirement. Its generalized assertions that State Farm applied NCCI edits to both its claims for reimbursement and the putative class members' claims does not automatically establish that the putative class members share the same interests or suffer the same injury as Coastal. To prove that State Farm inappropriately applied NCCI edits to Coastal's reimbursement and that Coastal was thereby injured, Coastal would have to demonstrate that it was entitled to the reimbursement in the first place, next show that the NCCI edit limited the reimbursement in one or more of the three impermissible ways under section 627.736(5)(a)(4), and then prove that State Farm had no setoff or unbundling defense for limiting the reimbursement.

Every member of the putative class would have to engage in a similar analysis, however, the analysis would involve different policyholders, different medical services, different billing codes, different NCCI edits, possibly different modifiers, and different defenses; thus an entirely different set of facts and legal conclusions. Therefore, even if Coastal could prove that Policyholder was entitled to a reimbursement and that State Farm improperly limited Policyholder's reimbursement by applying an NCCI edit, proving its own case would not necessarily prove that other providers were entitled to a reimbursement and that State Farm used an NCCI edit to improperly limit the reimbursement. Accordingly, Coastal's claims are not typical of the class, thus it has failed to satisfy all four prerequisites of Rule 23(a).

## IV. Conclusion

For the foregoing reasons, the Court, in its discretion, denies the Motion for Class Certification. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification (D.E. 41) is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Strike Defendant's Opposition

to Plaintiff's Motion for Class Certification (D.E. 63) is DENIED AS MOOT.

DONE AND ORDERED.